[No. 28407. Department Two. August 21, 1941.]

EULA CARMIN, *Respondent,* v. THE PORT OF SEATTLE, *Appellant,* J. A. EARLEY *et al., Defendants,* JULIUS C. HERBSMAN *et al., Appellants.*[1]

[1]Reported in 116 P. (2d) 338.

140

*Preston, Thorgrimson, Turner, Horowitz & Stephan,* for appellant Port of Seattle.

*Rummens & Griffin,* for appellants Herbsman *et al.*

*Mawer & Wigle,* for respondent.

BEALS, J.—For approximately seven years prior to December, 1939, Julius C. Herbsman had been in the employ of the port of Seattle, a municipal corporation. December 16, 1939, at about six-thirty o'clock in the evening, Mr. Herbsman was driving his automobile in a northerly direction along the east side of Eastlake avenue, an arterial highway, in the city of Seattle. He was approaching the intersection of Eastlake avenue with east Boston street, driving up a 4.9 per cent grade, Eastlake avenue leveling off at the intersection with east Boston street. Eastlake avenue is, at the intersection referred to, paved with brick, and on the date mentioned, carried two street car tracks, standard gauge. It was dark and rain was falling. This street carries probably as heavy traffic as any thoroughfare in the city of Seattle, outside the center of the city.

At the time referred to, Eula Carmin, the plaintiff herein, alighted from a northbound street car, at the intersection of Eastlake avenue and east Boston street, and while standing at or near the center of the street, awaiting an opportunity to cross the street to the west side thereof, was struck and severely injured by Mr. Herbsman's automobile.

Thereafter, Mrs. Carmin brought suit to recover damages on account of her injuries, naming as defendants port of Seattle, a municipal corporation, together with the port commissioners as individuals, and Julius C. and Anna M. Herbsman. During the trial the port commissioners as individuals were dismissed from the action. In her amended complaint, the plaintiff, after formal allegations, alleged that,

after leaving the street car and while proceeding to cross Eastlake avenue at the intersection crosswalk, she was struck and injured by the automobile belonging to the defendants Herbsman, and driven by defendant Julius C. Herbsman. Plaintiff alleged that Mr. Herbsman was negligent in driving his automobile to his left of the center of the street; in failing to keep a proper lookout for pedestrians; in failing to yield the right of way to plaintiff; in passing another vehicle near the crest of a hill, without having a clear view for not less than two hundred feet of the roadway ahead; and in operating his automobile at an excessive rate of speed, in view of the surrounding circumstances at the time.

Plaintiff alleged that, at the time of the accident, Mr. Herbsman was in the employ of port of Seattle, and was then engaged in the performance of his duties as such employee.

Defendants Herbsman answered the amended complaint, admitting that their car struck plaintiff, denying any damage to plaintiff, denying negligence on Mr. Herbsman's part, and affirmatively pleading contributory negligence on plaintiff's part. Defendant port of Seattle denied the allegations of plaintiff's complaint, denied that at the time of the accident Mr. Herbsman was acting in the course of his employment, and also pleaded affirmatively that plaintiff's negligence, directly and proximately, contributed to her injuries.

The issues having been completed, the action was tried to a jury, which returned a verdict in plaintiff's favor, against Mr. and Mrs. Herbsman and port of Seattle, in the sum of four thousand dollars. The defendants having interposed separate motions for judgment notwithstanding the verdict of the jury or in the alternative for a new trial, the motions were denied,

and judgment entered on the verdict in plaintiff's favor, from which judgment the defendants have prosecuted separate appeals.

Appellants Herbsman assign error upon the denial of their challenge to the sufficiency of the evidence and motion for a nonsuit at the close of respondent's case, and upon the denial of their motion for judgment in their favor as matter of law or in the alternative for a new trial. They also assign error upon the admission of several exhibits; upon the giving of five instructions; upon the refusal of the court to give four instructions which they requested. Appellant port of Seattle assigns error upon the denial of its motions, which duplicated those made by appellants Herbsman; upon the giving of four instructions; and upon the refusal of the trial court to give five instructions which it requested. Both appellants assign error upon the entry of judgment against them.

We shall hereafter refer to Mr. Herbsman as an appellant without reference to his wife.

From the evidence, it appears that respondent disembarked from a northbound street car at the south crossing of the street intersection. She desired to proceed to the west side of Eastlake avenue, so she waited in the street, apparently in a position between the two northbound lines of traffic, until the street car and two following automobiles had passed her. She then walked toward the west margin of the street, and commenced her observation of southbound traffic, when she was struck by the Herbsman car. Respondent testified that, when she was struck, she had reached a point west of the center of the street and a little west of the east rail of the westerly car tracks.

Mr. Herbsman testified that he was driving north in the westerly (or second from the curb) lane for northbound traffic, proceeding at from twenty to

twenty-five miles per hour, when he saw a woman step out from behind an automobile. He immediately applied his brakes and stopped the car, but was unable to stop it soon enough to avoid striking respondent. He testified that the right-hand front wheel of his car was on the east side of the easterly rail of the easterly car tracks, and that his left front wheel was midway between the two rails. He further testified that, after stopping his car, he immediately stepped down and found respondent in a kneeling position in front of his car on the right-hand side, "but distinctly to the right of the center of Eastlake."

Respondent was dressed in black, and appellants apparently contend that, because she says that when she left the street car she could have walked to the east curb line of the street, northbound traffic having stopped when the street car stopped, she was negligent in not doing so. Respondent was no wise negligent in not proceeding to the east curb. She disembarked from the street car at the pedestrian's crosswalk, where she had a perfect right to be, and where she enjoyed the right of way. The northbound automobile traffic along Eastlake was very heavy. No burden rested upon her to cross to the east curb and then undertake to recross the east half of the street, in accomplishing her journey to the west curb. The fact that respondent was wearing black clothing is immaterial.

Respondent testified that she was well to the west of the center of the street when she was struck. If her testimony is true, Mr. Herbsman was clearly driving, in part at least, on the wrong side of the street.

Appellants argue that the trial court should have held as matter of law that respondent was guilty of contributory negligence. She, of course, admitted that she knew Eastlake carried heavy traffic. Appellants

contend that she was negligent in proceeding close to the center of the street, and standing there for approximately two minutes, as she estimated the time, awaiting an opportunity to proceed to the west curb, and paying little attention to traffic approaching from the south. Ben Mead, a witness called by respondent, testified that he was driving a car along Eastlake in a northerly direction, in the second lane, and that he stopped at the scene of the accident immediately after it occurred. He testified that the left wheels of the Herbsman automobile were west of the center of the street, and that respondent was lying on the pavement directly in front of the right fender. Appellants argue that the testimony of this witness proves that respondent had not reached or crossed the center of the street when she was struck. The witness testified that at the time of the accident there were two regular lines of northbound traffic, and occasionally a third lane to his left. The witness saw the Herbsman car after it had stopped, and placed the Herbsman car at that time to his left, in the third line of northbound traffic, its left wheels to the west of the center of the street.

The situation was manifestly one of great danger to a pedestrian. The burden rested heavily upon all parties to use an extraordinary degree of care and caution. However, one in respondent's position, in two well nigh continuous streams of traffic north and south, was not negligent, as matter of law, in waiting in the center of the street until afforded an opportunity to with safety cross the southbound traffic to the westerly curb. Cases cited by appellants, in which a pedestrian steps from a place of safety on the sidewalk into traffic and is struck by an automobile which he could have seen approaching, are not in point. In the case at bar, respondent stepped from the street car in the middle

of the street, and was necessarily, from the time she disembarked, in a position of some danger.

The law imposes upon the driver of an automobile approaching a pedestrian crossing the duty of continuous observation and care. *Davis v. Riegel*, 182 Wash. 1, 44 P. (2d) 771. Violation of that duty constitutes negligence. *Hiteshue v. Robinson*, 170 Wash. 272, 16 P. (2d) 610.

Mr. Herbsman, called as a witness by plaintiff, testified that when he first saw respondent he was about fifty feet south of the intersection, as he indicated on a large map of the intersection, drawn to scale, which was an exhibit in the case. Later, testifying on his own behalf, he stated that respondent suddenly stepped out from behind some car in the curb lane to his right, and was but a car length from the Herbsman car when he first saw her. In this connection, Mr. Herbsman indicated on the map the position of the car from behind which, as he says, respondent stepped in front of his car. The position of the car referred to, as marked on the map by Mr. Herbsman, was well over to the west, near the easterly car rail, with plenty of room to its right for another lane of traffic, while Mr. Herbsman indicated the position of his car as well to the left of the car from behind which he testified respondent stepped.

Conflicts in the evidence, and the weight to be given the testimony of Mr. Herbsman, and any inconsistencies and explanations therein, were for the jury to determine, and the trial court did not err in refusing to hold either that no negligence on the part of appellant Herbsman was shown, or that respondent was guilty of contributory negligence.

Respondent offered in evidence a hospital bill and one rendered by her physician. Counsel for appellant Herbsman objected to the offered evidence as

incompetent. The exhibits offered were objectionable, for the reason that no evidence had been offered as to the reasonable value of the hospital service rendered or of the doctor's services. In the case of *Dahlstrom v. Northern Pac. R. Co.*, 98 Wash. 390, 167 Pac. 1078, and 100 Wash. 698, 171 Pac. 60, and the later case of *Cary-Davis Towing Co. v. Spradley*, 115 Wash. 93, 196 Pac. 655, it was held that such an objection as that here interposed was not sufficient to preserve the question on appeal. Under these authorities, we find no reversible error in the matter of the admission of these exhibits. The trial court did not, in its instructions, refer specifically to either item, as a basis for allowance of damage in case the jury should find for respondent.

Appellant Herbsman contends that the trial court erred in the giving of an instruction whereby the jury were told, *inter alia,* that the operator of a vehicle upon a public street is required to yield the right of way to a pedestrian occupying a crossing, and to exercise due care to avoid colliding with any pedestrian, etc. The instruction is criticized by appellant because due care was not defined in the instructions, and because the instruction also told the jury that it was the duty of appellant to give warning by sounding the horn when necessary. In this connection, appellant also complains of instruction No. 1, in which the jury were told that one of the grounds of negligence relied upon by respondent was Mr. Herbsman's failure to give any warning to the respondent, by sounding a horn or otherwise. Under the evidence, the instruction is not obnoxious to the objections urged against it by appellant, and we find in the instruction no reversible error.

Appellant Herbsman also assigns error upon the giving of an instruction concerning the matter of re-

spondent's alleged contributory negligence, in which the jury were told that, if they should find by a preponderance of the evidence that respondent was guilty of contributory negligence, she could not recover, whether or not Mr. Herbsman had been negligent. The instruction concluded with the words

"But you are to judge of her care by the standards heretofore given to you, and she was not necessarily required to keep a continuous lookout for approaching traffic."

Appellant complains of the portion of the instruction quoted, and contends that the instruction is defective, in that it tells the jury what respondent was not required to do, and the jury should have been told what an ordinarily prudent person would have been required to do. Considering the instruction in connection with others given, it contains no reversible error.

Appellant Herbsman complains of the refusal of the trial court to give several instructions which he requested. Reading the instructions which were given convinces us that no error was committed in the refusal of the trial court to give the particular instructions which appellant Herbsman requested.

Appellants Herbsman introduced some evidence on their behalf, while appellant port of Seattle stood on its challenge to the evidence, which it interposed at the close of respondent's case, and introduced no evidence.

The evidence shows that Mr. Herbsman had been in the employ of appellant port of Seattle for approximately seven years; that he solicited freight, and also engaged in public relations work. Most of his time was put in outside of his office, and he had no fixed hours of duty. He testified that he worked on an average twelve hours a day. He was paid a stated monthly salary, and received no commissions. He was

also allowed six cents a mile for the use of his automobile, while engaged on port business. In soliciting freight for the port, he was confined to defined territory, while as the port's relations officer, his duties called him throughout the entire state, and sometimes outside of its boundaries. As a public speaker he was in demand, and filled engagements during the daytime and in the evenings, pursuant to request, and in the exercise of his judgment. He enjoyed a large discretion in the use of his time, and of course in the use of his automobile on port business, in developing trade and good will for his employer. The automobile he used was his own, and he paid for any necessary repairs.

The accident with which we are here concerned occurred on a Saturday, on which day the port offices closed at noon. Mr. Herbsman left his office before twelve o'clock, attended to some business, and at about four o'clock went to the quarters of the Transportation Club, where he remained for approximately two hours, during which he transacted no business for his employer. He had expected to remain downtown for dinner, and spend the evening at the club, but, on calling Mrs. Herbsman shortly after six o'clock, he was informed that he should come home, as a friend of his, a Mr. Beach, wanted to see him and was coming to the Herbsman home, to be accompanied by Mrs. Beach. Mr. Herbsman then started home for dinner, proceeding by his usual route, and while on his way home, struck respondent, as above narrated.

Mr. Beach, who represented in the states of Washington and Oregon a wholesale dealer in drugs, was a rather close friend of Mr. Herbsman, both from business and social standpoints. The families often visited at each other's homes, the men generally passing some time discussing business affairs. On the evening in

question, Mr. Beach desired to see Mr. Herbsman in order to procure maps of Alaska, and to obtain some schedules and freight rates, which Mr. Herbsman agreed to procure for him. As the port owned no ships and operated no transportation facilities between Seattle and Alaska, this business did not directly concern Mr. Herbsman's employer.

The trial court held, as a matter of law, that Mr. Herbsman, according to the terms of his employment, was a servant of the port of Seattle, and not an independent contractor doing business with the port. The court submitted to the jury the question of whether Mr. Herbsman, at the time of the accident, was acting within the scope of his employment.

Appellant port argues that Mr. Herbsman was an independent contractor, relying upon that portion of the evidence which showed that Mr. Herbsman, in soliciting freight business, making contacts, and filling speaking engagements, in an attempt to develop potential business, used his own judgment and initiative in planning his work, appellant port contending that it neither exercised nor retained any right to control Mr. Herbsman as to the means or details by which he carried out either direct assignments or matters developed by his own initiative.

While in developing business for the port Mr. Herbsman enjoyed considerable discretion, the evidence shows that he did not occupy toward the port the position of an independent contractor, but on the other hand, was a servant or employee of the port, in the ordinary use of the word.

In the case of *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861, in discussing the relationship of an independent contractor as distinguished from an employee, this court quoted from 26 Cyc. 1546, as follows:

" 'An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work,' "

and quoted from 16 Am. & Eng. Ency. Law (2d ed.), 187, the following:

" 'Generally speaking, an independent contractor is one who, in rendering services, exercises an independent employment or occupation, and represents his employer only as to the results of his work, and not as to the means whereby it is to be accomplished. The word "results," however, is used in this connection in the sense of a production or product of some sort, and not of a service.' "

In the case of *Carlson v. Collier & Son Corp.*, 190 Wash. 301, 67 P. (2d) 842, we quoted with approval from the case last cited, again quoting from the authorities above referred to.

Mr. Herbsman received a fixed salary and mileage for the use of his car. In its brief, the port refers to Mr. Herbsman as its "Ambassador of Good Will." Mr. Herbsman's employment had continued many years, and he was, of course, thoroughly familiar with the best method to be followed by him in obtaining the results desired by the port.

Mr. Herbsman referred to a Mr. Everett Clark, an employee of the port, as his superior, stating that he was "sent out" by Mr. Clark. He was often instructed to conduct certain definite campaigns, and, as he testified, was sometimes sent out on special cases. He was not, generally, supposed to accomplish definite, tangible results. His efforts were intended to be cumulative, and react to the port's general benefit. He was at all times subject to such direction and control as his superiors cared, or thought wise, to exercise.

The trial court correctly held that Mr. Herbsman's relation to appellant port was not that of an independent contractor, but was that of an ordinary employee.

█ The court submitted to the jury the question of whether or not Mr. Herbsman, at the time of the accident, was operating his automobile on the business of the port. Appellant port contends that the trial court should have held as matter of law that at this time Mr. Herbsman was not engaged in the business of his employer. In this connection, appellant calls attention to the fact that the offices of the port had closed at noon, and that Mr. Herbsman had, during the afternoon, been enjoying social contacts with his friends at the Transportation Club. It was also argued that at the time of the accident he was not going home to meet Mr. Beach, but was on his way home to dine, the meeting with Mr. Beach being scheduled for a later hour at the Herbsman home. Mr. Herbsman testified that the use of an automobile was necessary in his work, saying: "It is absolutely essential. I couldn't do business without it."

Questions somewhat similar to this have been several times decided by this court. In the case of *Rice v. Garl*, 2 Wn. (2d) 403, 98 P. (2d) 301, this court quoted from annotations in A. L. R. as follows:

" 'If the circumstances involved in the case show that the activity in which the servant was engaged at the time of the tort complained of was within the scope of his employment, the fact that the automobile or other vehicle used by him, and which caused the injury, belonged to or was hired by the servant, will not preclude the person injured from recovering from the employer, if the servant's use of the vehicle was, either expressly or impliedly, authorized by the employer.' " 87 A. L. R. 787; 112 A. L. R. 921.

In the course of our opinion in the case cited, we said:

"If the judgment against appellant is to be sustained, it must rest upon the hypothesis that reasonable men might conclude from the above related evidence that Garl at the time of the accident was acting within the scope of his employment. The act of a servant is within the scope of his employment if it occurs while he is engaged in the work for which he was employed, at a time when, and in a place where, he is subject to the control of the master."

In the case cited, it was held that

"Where the evidence is in conflict and more than one inference can reasonably be drawn therefrom, it is for the jury to determine, under appropriate instructions from the court, whether the servant was acting within the scope of his employment at the time of the alleged injury."

Mr. Herbsman in his employment covered a wide range of activities. He testified that he had no fixed hours of duty; that he worked from eight-thirty or nine o'clock in the mornings, often until late at night, and also often worked Saturdays, Sundays, and holidays.

In the case of *Poundstone v. Whitney,* 189 Wash. 494, 65 P. (2d) 1261, this court said:

"Whether an employee, at the time the act was done for which the employer was sought to be held liable, was within the scope of his employment, depends upon whether the act had been expressly or impliedly authorized by the employer. In addition to this, the employer is liable if the act complained of was incidental to the acts expressly or impliedly authorized."

For a long period of time, appellant port had allowed Mr. Herbsman six cents a mile for the use of his car while on his employer's business. Mr. Herbsman charged to appellant port the mileage consumed on the trip in question.

The mere fact that Mr. Herbsman changed his intended plan to dine downtown, and decided to dine at

home, although Mr. Beach was not due until later, does not alter the situation. Mr. Herbsman was going to his home to meet Mr. Beach; whether he expected to see Mr. Beach before or after dinner was immaterial.

In the case of *Murray v. Kauffman Buick Co.*, 197 Wash. 469, 85 P. (2d) 1061, we quoted from the California case of *Ryan v. Farrell*, 208 Cal. 200, 280 Pac. 945, as follows:

" 'It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master.' "

In the case of *Forsberg v. Tevis*, 191 Wash. 355, 71 P. (2d) 358, we quoted from 1 Restatement of the Law of Agency, 530, as follows:

" 'The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service . . .' "

In support of its argument on this phase of the case, appellant port cites several of our decisions, as well as cases from other jurisdictions. Examination of these authorities convinces us that they are not in point on the facts as to the question now under discussion.

The trial court did not err in submitting to the jury the question of whether or not, at the time of the accident, Mr. Herbsman was engaged in carrying out the business of appellant port. Under the evidence, the question was one for the jury to determine.

Appellant port assigns error upon the refusal of the trial court to give several of its requested instructions. Consideration of the instructions requested, in connection with the instructions which the court gave, convinces us that the court committed no reversible error in refusing to give the instructions which appellant port requested, and of the refusal of which it complains.

Finally, appellant port assigns error upon the giving of certain instructions to which it excepted. We find it unnecessary to discuss the instructions of which appellant port complains, with one exception, the others being manifestly free from error.

By the court's instruction No. 19, the jury were instructed as follows:

"In order for you to find that defendant Herbsman was at the time of the accident acting within the scope of his employment, it must appear to you from a fair preponderance of the evidence that he was at the time carrying on his employer's business, that is, engaged in doing some act which was directly or indirectly in furtherance of his employer's business, and either expressly or impliedly authorized by the employer or incidental to such authorization.

"An employee who is merely going to and from work in his own car is not in the course of his employment even though he may be allowed compensation by the employer for the use of the car in and about the latter's business. *But in determining whether defendant Herbsman was in the course of his employment at the time, you should take into consideration all of the facts including whether the ownership and operation of an automobile were necessary to or instrumental in the performance of the duties incident to his employment, and the fact that the Port of Seattle was contributing to the cost of operation and upkeep.* And it is not necessary that you should find that defendant Herbsman was at the time of the accident engaged exclusively in the business of his employer, as the Port of Seattle might be liable for his acts even though his

purpose in making the trip was in part his own personal affairs or in part the business of some third person." (Italics ours.)

Appellant port complains of that portion of the instruction which we have italicized, arguing that the use of the phrase, "the fact that the Port of Seattle is contributing to the cost of operation and upkeep," was a direct comment on the evidence, and was also an inaccurate comment. Appellant argues that the admitted fact that Mr. Herbsman received from the port six cents a mile for mileage covered in port business, is a different thing from the cost of operation and upkeep. The payment of this allowance was admitted, as was the fact that Mr. Herbsman frequently used his automobile in connection with his accomplishment of the port's business. The mileage allowance would be properly described as on account of cost of operation. It might well be considered matter of common knowledge that a Chevrolet sedan, such as Mr. Herbsman's, would not use six cents worth of gas and oil per mile. The jury were instructed that they should consider the court's instructions as a whole, and consider each instruction in connection with all other instructions given. The court also instructed them that

"If it has appeared to you that the court, during the trial or in the giving of these instructions, has commented on the evidence, or indicated in any manner its opinion of the weight or convincing effect of any of the testimony, you shall disregard such comment entirely, for it is the jury and not the court which must decide the issues of fact in this case."

In view of the entire record, we find no reversible error in the portion of the instruction which we have discussed.

Appellant argues that the jury were instructed that, in determining whether at the time of the accident Mr. Herbsman was in the course of his employment,

they should consider whether an automobile was a necessary instrumentality in the performance of the duties incident to his employment, and the fact that the port allowed him six cents a mile while using his car on port business. The fact that the port admitted paying Mr. Herbsman the mileage allowance shows beyond question that it was considered that the automobile was necessary to the proper performance of his duties. Considering the instruction as a whole, the jury could not have been misled by the rather vague and indefinite language of which appellant port complains. The instruction is not well worded, but it cannot be held that the giving of the same constitutes reversible error.

The judgment appealed from is affirmed.

ROBINSON, C. J., MILLARD, SIMPSON, and JEFFERS, JJ., concur.

[1]Reported in 116 P. (2d) 300.