Paulyne B. McCALL, as the Administratrix of the Estate of Virgil C. McCall, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19164.

United States Court of Appeals
Ninth Circuit.

Nov. 25, 1964.

Horton Smith, Rocky V. Lindell, Smith, Lindell, Krutch, Carr & Poliak, Seattle, Wash., for appellant.

William N. Goodwin, U. S. Atty., Robert C. Williams, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HAMLIN, JERTBERG and DUNIWAY, Circuit Judges.

JERTBERG, Circuit Judge.

Appellant appeals from a judgment of dismissal entered in favor of the United States in an action brought against the United States in the District Court for the Western District of Washington, Northern Division, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Jurisdiction of the District Court was based on 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 et seq. This court has jurisdiction under 28 U.S.C. § 1291.

The facts are not in dispute. On March 31, 1963, one Ray E. Grantham, an enlisted man with a rating of Storekeeper 1st Class, in the United States Navy, while traveling in his own automobile from his home in Hayward, California, to Bremerton, Washington, struck and killed one Virgil C. McCall who was then engaged in changing a tire on the shoulder of the Tacoma-Seattle Freeway in the State of Washington. The United States has not, and does not, contest the fact that the negligence of Grantham in the control and operation of his automobile proximately contributed to the cause of McCall's death.

Following trial to the District Court, the court found as a fact, and concluded as a matter of law, that Grantham was not acting within the scope of his employment as an employee of the United States at the time and place of the accident which resulted in McCall's death, and accordingly entered judgment dismissing appellant's action with prejudice.

The record discloses that Grantham had enlisted in the United States Navy for a period of six years on April 14, 1961, and that in the early part of 1963 he was serving on board the USS CORAL SEA, moored at Alameda, California. He was approached by a shipmate who told him of a Storekeeper 1st Class, one Pedro Dela Cruz, then serving aboard the USS BON HOMME RICHARD, docked at Bremerton, Washington, who desired duty aboard the USS CORAL SEA for personal reasons. Grantham, on the other hand, wished to transfer to the USS BON HOMME RICHARD because the USS CORAL SEA was going overseas and he desired to remain closer to his family. After learning of the possibility for the exchange, Grantham initiated a special request through his division officer requesting an exchange of duty with Dela Cruz pursuant to the Navy's "no cost transfer" or "SWAP" program. That program is defined in the Navy's Enlisted Transfer Manual, Chapter 16, as follows:

"16.11   Definition

"A no cost transfer is defined as a personnel movement authorized for the convenience of the individual involved, and effected at no expense to the Government. Government transportation for the man, his dependents and household effects is not authorized, nor is payment of a dislocation allowance. Such transfers must be effected during periods of leave (except for hospital patients) and no proceed time or travel time is authorized."

As required by Chapter 16 of the Enlisted Transfer Manual, Grantham's letter request contained, in part, this state-

ment: "I understand that if my transfer in exchange is authorized it will be as a result of my own request for my personal convenience, and it is to be made at no cost to the Government."

The requests of Grantham and Dela Cruz were approved and each was issued a transfer order. The transfer order issued to Grantham granted him fifteen days leave, at the expiration of which he was to report on board the USS BON HOMME RICHARD. The transfer order contained the following typewritten caveat:

"NO EXPENSE TO THE GOVT IS AUTHORIZED IN CONNECTION WITH THESE ORD[ER]S, IN CASE YOU DO NOT DESIRE TO BEAR THE EXPENSE YOU WILL REGARD THIS AUTHORIZATION AS REVOKED."

It was stipulated that no proceed or travel time was authorized or allowed in the transfer. The transfer order authorized the use of Grantham's own automobile, but the authorization was unnecessary and meaningless because Grantham was on leave. He testified that he could have travelled by any means which he desired. After logging off the USS CORAL SEA on March 29, 1963, Grantham spent the night at his home in Hayward, California, and then left the following day in his privately owned automobile for Bremerton, Washington. While Grantham's leave was to expire on April 13, 1963, he reported to the BON HOMME RICHARD at Bremerton, Washington, on April 1, 1963, thus taking only a portion of the leave to which he was entitled.

The District Court found *inter alia* the following facts:

1. Grantham was on leave status at the time of the accident. His leave commenced March 30, 1963 and terminated April 1, 1963.

2. During said period of leave Grantham was entitled to his regular pay, but he was not entitled to any pay for travel and proceed time.

3. Grantham's transfer was initiated by him for purely personal reasons.

4. Grantham's duties as a Storekeeper 1st Class did not involve his driving or otherwise operating a motor vehicle.

5. Grantham was at all times subject to the provisions of the Uniform Code of Military Justice.

6. Grantham's exchange of duty with Pedro Dela Cruz was of some benefit to the military service for morale purposes which, in return, aided in the retention of qualified and experienced career personnel.

7. Grantham's orders provided for fifteen days' leave to travel between Alameda, California and Bremerton, Washington.

8. Said orders were further in error in that the license number designated in the orders was not correct. In addition although said Orders authorized use of Grantham's own automobile, because of the kind of transfer involved such authorization was unnecessary.

9. Grantham was not acting within the scope of his employment at the time and place of the collision.

28 U.S.C. § 1346(b) provides, in relevant part, as follows:

"* * * [T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligence or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2671, under the heading "Definitions", in relevant part provides:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

"* * *.

"'Employee of the government' includes * * *, members of the

military or naval forces of the United States, * * *.

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States means acting in line of duty."

28 U.S.C. § 2674, in relevant part provides:

"Liability of United States

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

" * * *."

Among the admitted facts appearing in the pretrial conference order is that Grantham was an employee of the United States at the time of the accident. It is to be noted that 28 U.S.C. § 1346(b), in substance provides that the District Court shall have exclusive jurisdiction of civil actions on claims against the United States for money damages, for injury or loss of property or personal injury or death caused by the negligence or wrongful act of any employee of the Government "while acting within the scope of his employment", and that 28 U.S.C. § 2671 provides that "acting within the scope of his office or employment", in the case of a member of the military or naval forces of the United States means "acting in line of duty."

■■ However, as stated in Merritt v. United States, 332 F.2d 397 at page 398 (1st Cir. 1964):

"It is settled that the phrase 'acting in line of duty,' while having a military sound, and, apparently, a different meaning in connection with benefit claims of military personnel against the government, with respect to the Tort Claims Act merely invokes the state law of respondeat superior. Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761; United States v. Taylor, 6 Cir., 1956, 236 F.2d 649, 74 A.L.R.2d 860, cert. dismissed, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19; United States v. Hainline, 10 Cir., 1963, 315 F.2d 153, cert. den. 375 U.S. 895, 84 S.Ct. 172, 11 L.Ed. 2d 124."

In accord see United States v. Campbell, (5th Cir. 1949) 172 F.2d 500, cert. den. 337 U.S. 957, 69 S.Ct. 1532, 93 L.Ed. 1757, and Chapin v. United States, (9th Cir. 1958) 258 F.2d 465, cert. den. 359 U.S. 924, 79 S.Ct. 607, 3 L.Ed.2d 627.

In the last cited case we stated, 258 F.2d at page 468:

"We must decide whether the peculiar status of a member of the armed services has any effect on the validity of the general rules already noted; or whether, for the purposes of *respondeat superior*, his status is to be considered similar to that of any private employee. We discern no basis in the statute waiving sovereign immunity nor in logic for making a distinction which would extend the scope and application of the doctrine of *respondeat superior* beyond that traditionally applied to private employers simply because the federal government in its military capacity finds itself in the role of employer." [Footnote omitted].

■■ 28 U.S.C. § 2674 imposes liability upon the United States respecting the provisions of the Federal Tort Claims Act, relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances. Under 28 U.S.C. § 1346(b) the determination of liability must be made "in accordance with the law of the place where the act or omission occurred." In this case the determination of whether Grantham was acting within the scope of his employment at the time and place of the accident must be made under the law of the State of Washington. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).

Because exclusive jurisdiction is conferred on the federal district courts by 28 U.S.C. § 1346, the state courts are precluded from passing upon the peculiar status of a member of the Armed Forces of the United States in the context of an action brought by a third person against the United States, based upon a wrongful tort committed by a member of the Armed Forces to the property or person of such third person. As stated in Chapin v. United States, supra, 258 F.2d at page 468:

> "Other federal courts, in transfer cases, under the applicable state law, have faced this issue and have failed to draw a distinction based upon the unique relationship of a soldier to his employer.[8]"

Footnote 8 to which the text refers, reads as follows:

> ["[8] United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914; Noe v. United States, D.C.E.D. Tenn.1956, 136 F.Supp. 639; Cf. Jozwiak v. United States, D.C.S.D. Ohio 1954, 123 F.Supp. 65."]

Analogizing the case before us to one of private employment, we have an employer who conducts the same type of business at two different locations—one location at Alameda, California, and one location at Bremerton, Washington, and who has a policy of permitting, under certain conditions, the transfer of an employee from one location to another. We have an office employee at Alameda, California, whose duties do not require or involve the operation of a motor vehicle, who initiates a request for transfer, for reasons personal to him, from the place of business of his employer at Alameda, California, to the place of business of the employer at Bremerton, Washington. The employer approves the request for transfer provided that the transfer of the employee from Alameda, California, to Bremerton, Washington, be made solely at the expense of the employee and without cost to the employer, and be accomplished during the two weeks paid vacation of the employee, and by such means of transportation as the employee may choose. The employee chooses to travel by means of his own automobile, and while traveling on his way to Bremerton, Washington, during the paid vacation period, negligently operates his automobile and causes death to a third person.

We believe under United States v. Campbell, supra, and Chapin v. United States, supra, that the case before us must be thus analogized in order to determine whether, under the law of the State of Washington, Grantham was within the scope of his employment by the United States at the time and place of the accident.

We have reviewed many decisions of the Supreme Court of Washington involving the doctrine of *respondeat superior* in a non-military context, and have found no case which would impose liability on the employer in this case when this case is stripped of its military overtones, such as, that Grantham during his leave was subject to call to duty, and subject to the provisions of the Uniform Code of Military Justice and other applicable service regulations.

We have culled from a review of many decisions of the Supreme Court of Washington, involving the doctrine of *respondeat superior*, the following quotations which we believe to be a fair representation of the tests which have been applied by that court in solving the scope of employment issue in non-military cases, where employee and employer relationship is admitted as it is in the instant case.

1. "(1) Conduct of a servant is within the scope of employment if, but only if:

   "(a) it is of the kind he is employed to perform * * *

   "(b) it occurs substantially within the authorized time and space limits * * *

   "(c) it is actuated, at least in part, by a purpose to serve the master." Brazier v. Betts, 8 Wash.2d 549, 561, 113 P.2d 34,.

39 (1941), citing Restatement, Agency, § 228, p. 505.

2. "The test for determining whether an employee is, at a given time, in the course of his employment, is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment or by the specific direction of his employer, or, as sometimes stated, whether he was engaged at the time in the furtherance of the employers' interests." Roletto v. Department Stores Garage Co., 30 Wash.2d 439, 443, 191 P.2d 875, 877 (1948); Greene v. St. Paul-Mercury Indemnity Co., 51 Wash.2d 569, 573, 320 P.2d 311, 314 (1958).

3. "It is the established rule in this jurisdiction that where the servant is combining his own business with that of his master, or attending to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master." Murray v. Kauffman Buick Co., 197 Wash. 469, 473–474, 85 P.2d 1061, 1063 (1938); Carmin v. Port of Seattle, 10 Wash.2d 139, 154, 116 P.2d 338, 344 (1941).

4. "The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service." Forsberg v. Tevis, 191 Wash.

355, 358, 71 P.2d 358, 359 (1937); Murray v. Kauffman Buick Co., supra, 195 Wash. at 473, 85 P.2d at 1063.

5. "The act of the servant must thus have been in the furtherance of some purpose of his own, rather than the furtherance of some purpose of the master, and the rule is general that when the servant acts for purposes of his own, not for the purposes of his master, and thereby causes an injury to another, the act is not within the scope of his employment and the master cannot be held liable therefor." Estes v. Brewer Cigar Co., 156 Wash. 465, 473, 287 P. 36, 40 (1930); Brazier v. Betts, supra, 8 Wash.2d at 556, 113 P.2d at 37.

6. "If the work of the employee creates the necessity for travel, he may be in the course of his employment though he is serving at the same time some purpose of his own; but if the work for the employer had no part in creating the necessity for travel, and the journey would have been made though no business was transacted for the employer, or would not have been made if the private purpose was abandoned, the journey may be regarded as personal and there would be no employer liability." McNew v. Puget Sound Pulp and Timber Co., 37 Wash.2d 495, 499, 224 P.2d 627, 630 (1950).

It is to be noted from the above citations that the conduct of the employee, to be within the scope of employment, must be "of the kind that he is employed to perform", "required of him by his contract of employment", "by the specific direction of his employer", or, in part at least, in the furtherance of the employer's interest or business.

Clearly, the driving of an automobile by Grantham was not the kind of work

that he was employed by the United States to perform, nor required by his contract of employment, nor by the direction of the United States. Equally clear is the fact that the driving of the automobile was not in furtherance of the interests or business of the United States. The fact that the "SWAP" program improves morale of those in the Navy and aids in the retention of qualified career personnel results from the program itself.

We have considered appellant's argument based on the doctrine of *qui facit per alium facit per se,* and find no merit therein when viewed in the context of this case.

We have reviewed our decision in United States v. Kennedy, 230 F.2d 674 (9th Cir. 1956), which case, as the instant case, arose in the State of Washington. In Chapin v. United States, supra, footnote 7, page 468 of 258 F.2d, the Kennedy decision was distinguished on the ground that the issue of scope of employment was conceded by the United States and that the issue was given no consideration by this court.

Appellant asserts that in fact the United States did not, in Kennedy, admit that the Sergeant there involved was acting within the scope of his employment, although the opinion states that such an admission was ·made. Hence, says appellant, the distinction of Kennedy that is made in Chapin is not valid. This would get us into the old argument as to whether a decision is authority for what the record required the court to decide, or only for what the opinion purports to decide. We need not enter that jurisprudential quagmire. Assuming, as urged by appellant, that the United States did not, in Kennedy, admit that the Sergeant there involved was acting within the scope of his employment, nevertheless, appellant's reliance on Kennedy is misplaced since the facts in Kennedy are clearly distinguishable from the controlling facts in the instant case.

The judgment of the district court is affirmed.