[No. 38527.    Department One.    June 1, 1967.]

PETER L. BALISE, JR., *Appellant*, v. JAMES F. UNDERWOOD, *Defendant*, MORRISON-KNUDSEN CO., INC., *Respondent.**

*Reported in 428 P.2d 573.

*Durkan & Durkan, Wolfstone & Panchot, Arthur E. Pieh-ler,* and *J. Murray Kleist,* for appellant.

*Allen, DeGarmo & Leedy, Stuart G. Oles,* and *Seth W. Morrison,* for respondent.

HAMILTON, J.—This is a wrongful death action tried to the court sitting without a jury. It arises out of an automobile accident occurring January 23, 1960, on the Stevens Pass Highway between the towns of Goldbar and Skykomish, Washington, and has previously been the subject of an appeal to this court from a summary judgment. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). As in the first appeal, the principal issue brought before us revolves around whether the defendant-respondent, Morrison-Knudsen Co., Inc., is vicariously liable for the negligent operation of an automobile owned and driven by an employee, defendant James F. Underwood, who, at the time of the accident, was on his way home from work. The fact that defendant Underwood was negligent in operating his automobile and that such negligence proximately caused the unfortunate accident is not now disputed. The trial court so found and entered judgment against defendant Underwood, from which no appeal has been taken. Plaintiffs appeal from the findings of fact, conclusions of law and

judgment denying recovery against the corporate defendant. We state the pertinent facts briefly.

Morrison-Knudsen Co., Inc., is a heavy construction contractor, and at all times concerned was working concurrently on several work projects located in various parts of the state, one of which was situated in the vicinity of Skykomish, some 35 miles or more from Everett, Washington. Underwood, a resident of Edmonds near Everett, and a local member of the International Union of Operating Engineers, had been employed for a number of years by respondent on various of its construction projects as a welder-mechanic on an hourly wage basis, and for several months prior to the accident here involved he was working as one of two welder-mechanics assigned to the Skykomish jobsite. In this respect the terms and conditions of his employment were covered and subject to a union-management agreement negotiated in 1959 by regional representatives of his union and Associated General Contractors of America, Inc., of which respondent was a member. Pursuant to this agreement Underwood was dispatched from the labor temple in Everett to the job and the Skykomish jobsite. As a result, he qualified and was entitled to receive, in addition to his hourly wage, the sum called for by the following provision of the union-management agreement:

When jobs are located outside of the city limits of Everett . . . and camp or board and lodging are not provided, the following additional remuneration will be paid:

. . . .

Over 35 miles from city center—$4.50 per working day shall be paid. Plaintiff's exhibit No. 20.

This sum was payable to him whether he resided in Edmonds, Everett, Skykomish or elsewhere, and regardless of how he transported himself to and from work.

Choosing to retain his residence in Edmonds, and because there was no public, company, or worker-pool transportation available, Underwood regularly commuted by his own automobile between his home and the jobsite, carrying in

his vehicle such tools as his occupation and employment agreement required him to furnish.

Several days prior to the accident involved, Underwood had, without respondent's consent, placed in his automobile a battery charger belonging to the company. He intended to use it for a personal purpose at his home, but found it was defective. Instead of immediately returning it, he retained it in his automobile hoping to obtain permission from his supervisor to get it repaired. The battery charger, along with some 300 to 700 pounds of tools, a substantial part if not all of which belonged to Underwood, were retrieved from his automobile after the accident.

On January 23, 1960, a Saturday, and the day of the accident, Underwood reported for work at the jobsite at 6 a.m. and signed off the job at 2 p.m. After leaving the jobsite, he drove to a fellow employee's home in Skykomish where he visited over a cup of coffee for upwards of 30 to 40 minutes. He thereafter stopped for another cup of coffee at a Skykomish cafe, and then proceeded, on the Stevens Pass Highway, west toward Everett and his home in Edmonds, anticipating that he might attend the wedding of his friend's daughter that evening. He was not required to perform any work nor was he normally, if ever, assigned any off-the-job duty on behalf of respondent while enroute to his home. Shortly after 3 p.m. and approximately 21-23 miles west of Skykomish, his vehicle collided head on with appellants' eastbound automobile producing the fatality and injuries giving rise to this suit. Following the accident and notification thereof, respondent's Skykomish project manager, accompanied by Underwood's immediate supervisor, and later Mrs. Underwood, obtained official release and custody of the Underwood automobile and its contents, *i.e.*, the tools and battery charger. The nature, extent, and reason for representations, made during the course of obtaining custody of the automobile and the equipment, regarding company ownership of some part or all of the equipment is somewhat in dispute, as is the question of whether any of the tools in the vehicle did in fact belong to re-

spondent. Likewise, whether the tools were immediately returned to Underwood's home or retained in the custody of respondent's representatives is the subject of some conflict.

Following the accident, Underwood filed a claim for workmen's compensation, alleging that, at the time of the accident, he was in the course and scope of his employment. After initiation of this suit, Underwood's counsel served upon appellants' counsel a copy of an answer admitting appellants' allegation upon the scope of employment issue. Underwood's claim for workmen's compensation was denied upon the grounds that he was injured without the scope of his employment, and he thereupon abandoned his claim. Thereafter, Underwood's counsel served and filed his present answer to appellants' complaint wherein he denied, for lack of information, the scope of employment allegation. Underwood denied during trial that these changes of direction were the result of an undefined fear he and Mrs. Underwood held regarding continuation of his employment with respondent.

Upon the basis of the foregoing factual pattern, the trial court found as a fact that at the time of the accident the defendant Underwood was not within the course and scope of his employment. From this finding the trial court concluded as a matter of law that respondent was not vicariously liable.

In appealing from the trial court's resolution of the central issue in the case, appellants basically contend that the evidentiary facts, together with the inferences to be drawn therefrom, compel a determination of vicarious liability either as a matter of law or as a matter of public policy.

In support of this contention, appellants point to the following factors which they deem to be indisputably established by the evidence: (a) The payment of the $4.50 per working day as provided by the union-management agreement as and for travel expense; (b) the presence of company equipment in Underwood's automobile; (c) Underwood's employment on various company project sites from time to time; (d) Underwood's availability for overtime or emergency work; (e) the remoteness of the various

company project sites; (f) the added traffic upon the highways engendered by recruitment of employees and their travel to and from remote areas; and (g) the irregular and long hours of work involved in the heavy construction industry. Appellants argue that such factors singly, in varying combinations, or in the aggregate either render applicable certain exceptions, dictate the creation of additional exceptions, or justify an abdication of the general rule appertaining to employer responsibility for the conduct of employees "going and coming" from work.

We cannot agree with appellants.

The "general rule" to which appellants allude has long been recognized by this court[1] and, as pertains to the instant case, was recently stated in *Elder v. Cisco Constr. Co.*, 52 Wn.2d 241, 244, 324 P.2d 1082 (1958), as follows:

> As a general rule, an employee traveling from the place of work to his home *or other personal destination,* after completing his day's work, cannot ordinarily be regarded as acting in the scope of his employment so as to charge the employer for the employee's negligence in the operation of the latter's own car.

■ The "exceptions" to the general rule, to which appellants refer, generally, if not invariably, spring from the particular facts and circumstances of the cases out of which they arise. And, in those instances where there is any valid evidentiary dispute, conflict or interpretative issue surrounding the employment status of an employee, while going to or coming from his day's work, the applicability of a recognized exception to the general rule becomes a question of fact to be resolved by the trier of the facts. It is only when the dispositive facts relative to the questioned employer-employee relationship are without dispute, or are such as to lend themselves to but one conclusion, that they compel a given determination. *Kludas v. Inland-American Printing Co.*, 149 Wash. 180, 270 Pac. 429 (1928); *Rice v.*

---

[1] *Carroll v. Western Union Tel. Co.*, 170 Wash. 600, 17 P.2d 49 (1932); *Bourus v. Hagen,* 192 Wash. 588, 74 P.2d 205 (1937); *Rice v. Garl,* 2 Wn.2d 403, 98 P.2d 301 (1940); *McNew v. Puget Sound Pulp & Timber Co.,* 37 Wn.2d 495, 224 P.2d 627 (1950).

*Garl,* 2 Wn.2d 403, 98 P.2d 301 (1940); *Carmin v. Port of Seattle,* 10 Wn.2d 139, 116 P.2d 338 (1941); *McNew v. Puget Sound Pulp & Timber Co.,* 37 Wn.2d 495, 224 P.2d 627 (1950); *Elder v. Cisco Constr. Co., supra.* See, also, Annot., Employer's liability for negligence of employee in driving his own car. 52 A.L.R.2d 287 (1957).

In the instant case, the principal factors upon which appellants rely in urging an exception cannot, under the evidence adduced, be characterized as undisputed or otherwise unequivocally established. Instead, most, if not all, of such factors are subject either to some conflict in the evidence, nuances in factual interpretation, or varying inferences and implications. For example, it is not at all certain that the "additional remuneration" provided for by the union-management agreement can be truly characterized as travel pay or reimbursement, for, as a matter of acknowledged fact, it was payable to all employees dispatched to the jobsite out of the union headquarters in Everett, whether such employees actually lived in the Everett environs and automotively commuted to the jobsite or lived in Skykomish and walked to work. Likewise, the evidence is inconclusive as to whether Underwood was in fact carrying any significant number of respondent's tools in his vehicle at the time of the accident, and, if so whether such tools as he was carrying served any substantial company purpose beyond his own convenience, inclinations, or occupational custom. Also, the evidence fails to establish, with any conviction, that Underwood's employment over the years at various of respondent's construction projects conferred upon him any extraordinary status as a company welder or mechanic, which—as opposed to the ordinary concept of hourly employment in the construction trade—required his constant availability and readiness for emergency or special assignment and reassignment between company projects. Rather, the evidence tended to establish that he, as any other welder-mechanic, moved from one company project to another, within his union's jurisdiction, as work in his trade became available. When there was no work in his trade, he was unemployed, and when there was work on a

project he remained on that project until his type of work was completed.

■ On the whole, we are satisfied that, under the evidence adduced, the question of whether Underwood was within the course and scope of his employment at the time of the accident presented purely a factual issue. This factual issue was decided adversely to appellants, and that determination is supported by substantial evidence. We, accordingly, cannot disturb the trial court's finding. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). And, we find nothing in the facts of this case, as revealed by the evidence, that dictates the creation of another exception or persuades us to rewrite the general rule relative to vicarious liability in this field.

■ Appellants next assign error to the trial court's denial of a motion to amend the pleadings to conform to the proof, made at the conclusion of their evidence. Rule of Pleading, Practice and Procedure 15(b), RCW vol. 0. By this motion, appellants sought to inject an allegation of direct negligence against respondent, resting upon evidence bearing upon the number of hours Underwood had worked during the 3 weeks preceding the accident. It was their theory, in this respect, that it was "very possible" Underwood could have been overtired, thereby causing him to use bad driving judgment on the highway. Although it was within the province of the trial court to have granted this motion, we find no reversible error in the denial. So far as the record before this court reveals, there was no evidence presented, rising above pure speculation, from which it could be determined that the accident was occasioned by Underwood's physical state. Absent any evidence on this score, we cannot say the trial court abused its discretion in refusing to permit the amendment.

■ A further assignment of error is directed to the trial court's rejection of the testimony of a court reporter, relative to the average time required in the interrogation of a witness to consume a given number of pages of typewritten transcript. This was offered by way of indirect im-

peachment of the testimony of Underwood as well as in contradiction to another witness who testified as to his recorded interview with Underwood. The proffered contradictory matter was clearly collateral to the main issues in the suit. It was not such a fact as could have been shown in evidence for any purpose independently of the contradiction. *State v. Oswalt,* 62 Wn.2d 118, 381 P.2d 617 (1963). We find no error in the trial court's ruling.

Finally, appellants assign error to the denial of their request for a jury trial made after the cause had been noted and set for trial. A review of the transcript reveals that this action was commenced by serving and filing the complaint in September, 1960. Answers by the respective defendants were served and filed by April 1961. A variety of pretrial proceedings ensued, including an appeal to this court from a summary judgment (*Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963)), and the cause was first noted for trial setting on November 29, 1963. It was then set for trial as a nonjury case. Thereafter, in the early part of January, 1964, appellants moved for permission to file a demand for jury and for a jury trial. After hearing arguments and considering additional memorandums, the trial court denied the motion.

Appellants concede that the applicable statute, RCW 4.44.100,[2] has long been interpreted by this court as conferring discretion upon the trial court in passing upon a belated demand for jury trial. They contend, however, that, since the case involved a complex factual situation, multiple parties, numerous counsel, and protracted pretrial pro-

[2]"In all civil actions triable by a jury in the superior court any party to the action may, at or prior to the time the case is called to be set for trial, serve upon the opposite party or his attorney, and file with the clerk of the court a statement of himself, or attorney, that he elects to have such case tried by jury. Unless such statement is filed and a jury fee paid as provided by law, the parties shall be deemed to have waived trial by jury, and consented to a trial by the court: *Provided,* That, in the superior courts of counties of the first class such parties shall serve and file such statement, in manner herein provided, at any time not later than two days before the time the case is called to be set for trial." RCW 4.44.100.

ceedings, oversight in filing a demand for jury was understandable, and a refusal of their demand after the cause had been set for trial amounted to either an abuse of discretion or failure to exercise any discretion.

We cannot agree with appellants' contention.

In *Niemeier v. Rosenbaum*, 189 Wash. 1, 4, 63 P.2d 424 (1936), we upheld the denial of an unseasonable request for jury trial, stating:

> As we said in *Davis v. Falconer*, 159 Wash. 230, 292 Pac. 424, in discussing a question similar to the point raised here,
>
> "The question is one which rests in the sound discretion of the trial court, and in the absence of abuse, the exercise of that discretion will not be disturbed."
>
> In the case cited, a jury trial was awarded, but the same rule should be applied in the case at bar. Under the rules, appellant did not seasonably demand a trial by jury, and in denying a late demand for such a trial, the court did not abuse its discretion.

■ Though we may or may not agree with the trial court's ruling in the instant case, we cannot say the trial court manifestly abused its discretion or failed to exercise any discretion. The demand came more than 3 years after the action had been instituted, and more than 2 years after the cause was initially at issue. By appellants' own admission the issues were somewhat complicated and beset with evidentiary problems, and, with multiple parties and counsel, the case boded well to consume a number of days in trial. The trial court was aware of the nature and characteristics of the action, and must be presumed to have been versed in the status of its jury and nonjury trial docket and the availability of prospective dates for potentially protracted trials.

To hold that the trial court, under these circumstances, either failed to exercise or abused its discretion in refusing the belated demand would be tantamount to holding that the trial court had no discretion in the matter.

The judgment is affirmed.

ROSELLINI, HUNTER, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.

July 28, 1967. Petition for rehearing denied.