**Patricia A. DAVIES, Administratrix of the Estate of James W. Davies, Deceased, et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 75–1480.

United States Court of Appeals, Ninth Circuit.

July 6, 1976.

Shannon Stafford (argued), Guttormsen, Scholfield & Stafford, Seattle, Wash., for plaintiffs-appellants.

William H. Rubidge, Asst. U. S. Atty. (argued), Seattle, Wash., for defendant-appellee.

Before MOORE * and DUNIWAY, Circuit Judges, and TAYLOR,** District Judge.

MOORE, Circuit Judge:

Patricia A. Davies, Administratrix of the Estate of James W. Davies, appeals from a judgment of the United States District Court for the Western District of Washington, entered after a bench trial before Honorable Morell E. Sharp, U. S. D. J., which dismissed her complaint under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*; 28 U.S.C. § 1346, on the ground that the concededly negligent employee of the United States of America, Anthony C. Cajka, a Commander in the United States Navy, was not acting within the scope of his employment when he collided with a car being driven by the decedent, James W. Davies, Patricia's husband.

■ The only issue on appeal is whether Commander Cajka was acting within the scope of his employment at the time of the accident. In deciding the question, we are bound to apply the state law of Washington. 28 U.S.C. § 1346(b); *McCall v. United States*, 338 F.2d 589 (9th Cir. 1964), *cert. denied*, 380 U.S. 974, 85 S.Ct. 1334, 14 L.Ed.2d 269 (1965). Washington law compels affirmance of the lower court judgment for reasons which follow a recitation of the relevant facts as found by the lower court.

Commander Cajka was the project officer for the overhaul of a submarine which was berthed at the Puget Sound Naval Base in Bremerton, Washington. Cajka's normal working hours were 7:30 A.M. to 4:30 P.M., Monday through Friday, although it was not unusual for him to work overtime. The Navy provided him with an office at the shipyard.

On the day of the accident, Wednesday, March 22, 1972, Cajka left the shipyard at noon and drove to his home, roughly ten miles from the base, to prepare a briefing scheduled two days hence. He worked at home on the briefing until late afternoon when he left and drove to the Beachcomber Cafe in nearby Port Orchard, where he ate and drank until 9:30 P.M. Then he left the cafe and headed in the direction of Bremerton, "intending to retrieve a certain docu-

* Honorable Leonard P. Moore, United States Circuit Judge, Second Circuit, sitting by designation.

** Honorable Fred M. Taylor, United States District Judge, District of Idaho, sitting by designation.

ment he needed to prepare the briefing." When he had almost reached Bremerton he changed his mind and turned to return home, but before he reached there, he changed his mind for the second time and turned toward the shipyard. The accident occurred while he was headed for the base this second time. He negligently crashed his car into the car being driven by James W. Davies, which was occupied by his wife and child. A breathalyzer showed that Cajka was thoroughly drunk at the time. James Davies did not survive the accident.

As to Washington law, there is no dispute that the applicable standards were articulated in *Greene v. St. Paul-Mercury Indemnity Co.,* 51 Wash.2d 569, 573, 320 P.2d 311, 314 (1958).

> "The test adopted . . . for determining whether an employee is, at a given time, *in the course of his employment,* is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, *or* by specific direction of his employer; *or,* as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest."*

The disagreement is whether the trip to the shipyard in the middle of the night was, as stated by the *Greene* court, *supra, "in the furtherance of the employer's interest."* The lower court held that it was not because it found that Cajka decided to work at home solely for his personal convenience. Contrary to appellant's assertion that finding is not clearly erroneous. The Navy had provided Cajka with on base facilities, and there was sufficient time to prepare the briefing during normal working hours, as it was not to occur for two working days.

Alternatively, appellant contends that the facts of the case bring it within exceptions to the general Washington rule that "commuting" to or from work is outside the scope of employment. She relies on *Rice v. Garl,* 2 Wash.2d 403, 98 P.2d 301 (1940); *Carmin v. Port of Seattle,* 10 Wash.2d 139, 116 P.2d 338 (1941). But even aside from the holding of *Balise v. Under-*

wood, 71 Wash.2d 331, 428 P.2d 573, 577 (1967), that "the applicability of a recognized exception to the general rule becomes a question of fact", a close inspection of the cases relied upon by appellant indicates that the threshold consideration for application of the exception is unsatisfied. If the place of employment, as here, is relatively fixed then travel to and from work is not within the scope of employment and the exception is inapplicable. *Rice, supra,* 98 P.2d at 304; *accord, Carmin, supra,* 116 P.2d at 344. The mere possibility that Cajka might be called upon to commute to this job at any hour does not alter the conclusion.

Dicta in *Balise, supra,* 428 P.2d at 577, is not to the contrary. There the court, in reciting commuter rule exceptions, referred to an employee's "extraordinary status" which "required his constant availability and readiness for emergency or special assignment and reassignment *between* company projects." The absence of a single relatively fixed place of employment distinguishes that hypothesized exception from the facts of this case. If the place where work is to be conducted is fixed, it is immaterial whether the employee is an exalted executive or more humble servant. Here the Commander's place of employment was fixed at the United States Naval base.

Also inapplicable is the "special errands" exception to the commuting rule which is succinctly defined in *Boynton v. McKales,* 139 Cal.App.2d 777, 294 P.2d 733, 740 (Cal. App.1956) as follows:

> "If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or returning to it on a special errand either as part of his required duties or at the specific order or request of his employer, the employee is considered to be in the scope of his employment from the time he starts on the errand until he has returned or until he deviates therefrom for his own personal reasons. . . . "

While work at home may have been Cajka's inclination, it certainly was not his duty,

incidental or otherwise, and even if it were, the midnight journey to the base was not.

Some courts have transformed the "special errands" exception into a rule emphasizing exclusively the managerial status of the employee on the theory that the duties of a manager are nothing more than a series of special errands. *See Short v. United States,* 245 F.Supp. 591 (D.Del.1965), citing *Wilson v. Steel Tank & Pipe Co.,* 152 Or. 386, 52 P.2d 1120 (1935). A short answer to appellant's reliance upon this argument is that Cajka's journey was not encompassed directly or indirectly by Cajka's privileges or duties. But more importantly, an application of the *Short* rule to the facts of this case would deviate from the principles which define the scope of vicarious liability.

In the final analysis, the various embellishments upon the general doctrine of respondeat superior are simply shorthand devices developed to allocate risk justly. A business should bear all risks which are normally associated with carrying on the business, but it should not be saddled with risks which arise solely by virtue of its employee's pursuit of purely personal convenience. Extensions of the "managerial status" exception to the facts of this case would only serve to obliterate this crucial distinction. A midnight trip to a Naval base for purely personal reasons was not a risk in any way associated with Navy business or one which the Navy equitably ought to bear. This conclusion is confirmed by the comments to the tests in Restatement of Agency 2d which, as the lower court correctly observed, echo Washington law. Comment c to § 229 states:

> "If, however, such acts are for the personal convenience of the employees and are merely permitted by the master in order to make the employment more desirable, the acts are not within the scope of employment."

*A fortiori* on the facts of this case. It is far from clear that Cajka's superiors either tacitly or explicitly approved or ratified Cajka's decision to work at home. The trip to retrieve a document was actuated by Cajka's desire to facilitate personal convenience, *i. e.,* working at home. To be sure, the briefing comprised a part of Cajka's authorized work, but the Navy did not authorize Cajka to explicitly or implicitly use outrageous or whimsical means to perform that task. See Restatement of Agency 2d, § 229, comment b.

■ The fault is clear, the consequences most unfortunate, but right to recovery against the United States has been defined and restricted by 28 U.S.C. § 1346(b) to actions on claims against the United States for "death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The trial court properly found that the law and the facts here did not meet these requirements.

Judgment affirmed.