CUNNINGHAM *v.* UNION CHEVROLET Co., *et al.*, and four other cases.

(*Nashville*, December Term, 1940.)

Opinion filed February 16, 1941.

Rehearing denied March 8, 1941.

John R. Gilliland, of Memphis, for plaintiffs in error.

Emmett W. Braden and Charles G. Morgan, both of Memphis, for defendants in error.

Mr. Chief Justice Green delivered the opinion of the Court.

These suits grew out of an automobile accident in which persons in each of the two cars that collided sustained injuries. The cases were tried together and the jury returned verdicts in favor of each plaintiff. There

were two defendants—Union Chevrolet Company and Herbert F. Riggins. On motion for a new trial the circuit judge concluded that he had erred in submitting the cases to the jury as to defendant Union Chevrolet Company and entered an order, as on directed verdicts, dismissing the suits as to that defendant. He approved the verdicts as to defendant Riggins and judgments were entered against him. Riggins has prosecuted no appeal. Plaintiffs have prosecuted appeals in so far as their suits were dismissed as to Union Chevrolet Company.

Riggins had a contract with Union Chevrolet Company under which he sold automobiles on commission for that company. The trial judge was of opinion that Riggins was an independent contractor. The Court of Appeals seems to have differed from the circuit judge in this conclusion but the Court of Appeals held that although Riggins was a servant or agent of defendant company, he was not acting for that company, prosecuting the business of that company, at the time of the accident, but was on a mission of his own. The Court of Appeals accordingly affirmed the judgments of the court below dismissing the suits as to Union Chevrolet Company.

It is conceded on appeal that the collision of the two cars was due to negligence of Riggins.

The first question to be determined in reviewing the decision of the Court of Appeals is whether Riggins was acting as the agent of defendant company and about the company's business at the time of the accident. It may be admitted that in general he was an agent of defendant company employed by it to sell automobiles.

This accident occurred on a Sunday night, or more properly early Monday morning. Riggins was not required under the terms of his employment to work on Sunday, although if he had made a satisfactory sale on

Sunday, such sale would have been ratified by his employer.

On this particular Sunday, in company with a young lady friend, Riggins had driven his own car out into the country to take dinner with other friends who lived out there. The trip was obviously a pleasure trip, business not being in contemplation.

After dinner, some time in the middle of the day, Riggins and his host and hostess, perhaps others, engaged in a poker game. The girl whom Riggins had taken out did not play poker and was left to her own devices. The poker game continued and the girl, concluding that Riggins was unmindful of his duties as her escort, that she was being neglected, got mad and went home by herself.

Riggins and the others, or some of the others, continued the game until about nine o'clock at night. At that time the game broke up, but Riggins, not having had his fill of pleasure, went to a roadhouse in the neighborhood. There he made some other acquaintances, formed a new party, and this party danced, drank beer, and amused themselves until midnight or after.

The party with whom Riggins fell in at the roadhouse had arrangements with a young man in Memphis to come out and take them back. When this young man arrived, they were not ready to go back to the city, and he went back, the party accepting Riggins' invitation to ride back to the city in his car.

Finally, about midnight or thereafter, Riggins and his new friends got into Riggins' car and started back to the city. On the way back, Riggins driving the car, the collision occurred, and the injuries upon which these suits were based were inflicted.

Now, plainly, upon the facts thus stated, this trip of Riggins to the country was for his own pleasure and his

trip back to the city was for his own purposes. If the parties riding with him were detained at the roadhouse by his invitation, it is still quite apparent that all of them remained there to prolong their amusement. Riggins did not detain them to sell a car to them, nor did he bring them back to town for the purpose of demonstrating a car. At least, no such motives as these on his part were primary.

The basis for the contention that Riggins was acting as a servant and agent of defendant company and prosecuting defendant company's business on this occasion is this:

It is in evidence that while the party was at the roadhouse and getting acquainted some of the men asked Riggins what business he was in and he told them, and he seems to have asked the others as to their avocations and one of the witnesses said that they all talked shop a little.

It further appears that Riggins, while at the roadhouse, sounded two of the men in the party about purchasing a Chevrolet car and there was some discussion about the matter, but nothing accomplished.

When the party started back to town the plaintiffs offer evidence that Riggins, driving his car, undertook to show them how easy it started, how easy it would pick up, and that he speeded the car for a time and perhaps otherwise undertook to demonstrate it. The witness Wood who testified to the above facts said that these stunts with the car occurred when they started back from the roadhouse. There is nothing in Wood's testimony indicating that Riggins was putting the car through its paces, or driving at an excessive speed at the time of the collision, nothing to indicate any demonstration of the car at that time.

Wood and Savage were the only two persons in the car, apart from Riggins, who testified. Savage unequivocally stated that the car was not being operated at excessive speed at the time of the collision but was running forty or forty-five miles an hour on its right-hand side of the road. The accident occurred on a four-lane concrete highway.

If, therefore, it be said that Riggins did attempt to transact some business for his employer on this outing, there is no proof that he was doing anything of the kind at the time the accident occurred. Any efforts on Riggins' part to sell a car on this trip must be regarded as incidental. If a trip like the one in question is planned and carried out for the agent's pleasure, or for the agent's purposes, the circumstance that he may on such a trip make some effort in his principal's behalf does not convert the trip to an errand for the principal and render the principal responsible for the negligent operation of the agent's vehicle. This would be true if the vehicle belonged to the principal and had been loaned to the agent for the pleasure or business purposes of the latter.

The only qualification of the statement just made would possibly be to hold the principal responsible if the agent's negligence occurred in the very act of performing the incidental service for a principal, and we are not saying that liability would follow even in that case.

Decisions of this court in workmen's compensation cases throw much light on the controversy here presented. Although an employee is sent out on a particular mission for his employer, if the employee departs from his proper route for purposes of his own, and sustains an accident in the course of this departure, such an acci-

dent does not arise out of his employment. *Hinton Laundry Co.* v. *DeLozier*, 143 Tenn., 399, 225 S. W., 1037, 16 A. L. R., 1361; *Shockley* v. *Morristown Produce & Ice Co.*, 158 Tenn., 148, 11 S. W. (2d), 900; *American Casualty Co.* v. *McDonald*, 166 Tenn., 25, 57 S. W. (2d), 795, 796. It must follow if the mission is undertaken for the employee's individual purpose and there is a departure in the employer's interest, an accident to the employee would arise out of his employment only during the course of the departure in his employer's behalf. In the case of *American Casualty Co.* v. *McDonald, supra*, the court quoted and approved *Barragar* v. *Industrial Commission*, 205 Wis., 550, 238 N. W., 368, 78 A. L. R., 679, and *Matter of Marks' Dependents* v. *Gray*, 251 N. Y., 90, 167 N. E., 181. The quotation approved from the Wisconsin Court was as follows:

"We have concluded that it is essential, by some process or other, to determine whether, at the outset, the trip in question was that of the employer, or that of the employee. Having determined that it was the employer's trip, the employee is engaged in his employer's business and acting within the scope of his employment while going to and returning from the terminus of the trip. If it is the employee's trip, he is not within the scope of his employment while enroute to, or returning from, the terminus of his trip. In case it is the employer's trip, and there are any detours for purely personal objectives, such detours must be separated from the main trip and the employee held to be outside the scope of his employment during such detour. If it is his own trip, then such detours as are made for the purpose of dispatching business for his employer must be held to be within the scope of his employment."

In *Matter of Marks' Dependents* v. *Gray, supra* [251

N. Y., 90, 167 N. E., 182], Chief Judge CARDOZO put this illustration:

"A servant in New York informs his master that he is going to spend a holiday in Philadelphia, or perhaps at a distant place, at San Francisco or at Paris. The master asks him while he is there to visit a delinquent debtor and demand payment of a debt. The trip to Philadelphia, the journey to San Francisco or to Paris, is not a part of the employment. A different question would arise if performance of the service were to occasion a detour, and in the course of such detour the injuries were suffered."

As stated, the cases just above mentioned were compensation cases but the principle is applicable here, for an accident, unless it arose out of his employment, could not be an accident occurring in the prosecution of the employer's business.

■ Indeed the law is applied more strictly in negligence cases, where it is sought to hold the master liable for the servant's act, than in compensation cases.

■ "The mere fact that the injury complained of was caused by negligence of the servant in the performance of an act which, taken per se, was within the scope of his employment, will not impose a liability upon the master, if the act was merely incidental to the servant's attempt to perform an act entirely beyond the scope of his authority." Sherman and Redfield on Negligence, 6th Ed., vol. 1, sec. 148.

The rule just quoted is applied in two well considered cases as follows:

In *Roselle* v. *Bingham,* 242 Ky., 496, 46 S. W. (2d), 784, it appears that Bingham, the employer, lived outside of Louisville and Misselbrook was his butler. Misselbrook had a car of his own which he was driving and Bingham

was sued in consequence of an accident in which Missel-brook, driving his own car, injured a child. A few days before the accident Bingham asked Misselbrook the next time he went to town to take his (Bingham's) tennis racket with him to be repaired. On the day of the accident Misselbrook went to town to cash his salary check and to attend to other matters for himself. He took along with him Bingham's tennis racket to be repaired and in addition to this a pair of trousers belonging to Bingham to be repaired. He had not mentioned the trip to Bingham and Bingham had nothing to do with the car. The court held that under such circumstances Bingham was not liable for the injury inflicted on the child. That the employee was as much a stranger to his employer on that occasion as any stranger would have been and that the case was the same as if the employed had asked a neighbor to take the articles to be repaired for him.

In *Schoenherr* v. *Hartfield*, 172 App. Div., 294, 158 N. Y. S., 388, Babcock was Hartfield's chauffeur and the latter's car seemed to have been placed in a garage for repairs in New York City. Hartfield was out of the city. Babcock got the car out after repairs had been made and drove it over to his home in Brooklyn to visit his wife and to take some money to her. On the return from the trip an accident occurred and an effort was made to hold Hartfield on the theory that it was Babcock's duty to test the car after getting it from the garage and that he was testing it on this trip. The court, however, held that the primary purpose of the journey was for the business or pleasure of the servant and the use of the master's vehicle was but an incident of the servant's errand. That the return trip was as much a part of this errand of the servant, as far as the use of the car was concerned, as the going trip and

that the master was not liable since the use of the car for any purpose of the master was purely incidental.

The case before us is rather a stronger one for the employer than the two just mentioned. In both these cases such business of the master as was involved was in course of transaction. In the present case everything done on behalf of the defendant company by way of trying to make a sale and demonstrating the car, was done at the roadhouse or just after leaving there, and there is no evidence that Riggins was giving a sales talk or showing off the car when this accident occurred.

It is urged in behalf of plaintiffs below that but one question was open for decision in the Court of Appeals and that but one question is open for decision by this court, namely, whether Riggins was an independent contractor or a servant or agent of defendant company. If not an independent contractor, plaintiffs' verdicts should be re-instated and judgments entered thereupon. This argument is based on some observations of the trial judge in acting on the motion for a new trial, which indeed he incorporated in his judgments.

The court said that he granted the motion as for directed verdicts because he felt constrained to hold that Riggins was an independent contractor. Otherwise he said that he would have approved the verdicts of the jury in every respect, and that the evidence introduced in the cases "was legally sufficient to warrant the submission to the jury of the question of whether defendant Herbert F. Riggin was at the time of the accident involved in this cause an agent or servant of the defendant Union Chevrolet Company."

Union Chevrolet Company naturally prosecuted no appeals from the judgments in its favor. It is accordingly insisted that no errors committed against it

by the trial judge can be corrected. Authorities cited for this proposition are scarcely applicable. The record shows a general motion for directed verdicts for the defendant company which raised the question of the existence of evidence to support verdicts for plaintiffs in any aspect of the cases. The trial judge did not direct special verdicts and the cases stood as though there were general verdicts for defendant company covering all issues and referable to any evidence sustaining them. Such verdicts and the judgments entered thereupon were accordingly in no particular adverse to defendant company.

 Moreover, as noted in the opinion of the Court of Appeals, the peremptory ruling of the trial judge that Riggins was an independent contractor and his ruling that there was evidence showing Riggins to have been an agent or servant of defendant company at the time of the accident—these two rulings involved a contradiction in terms. Riggins could not have been an agent or servant of defendant company with respect to this transaction and at the same time have been an independent contractor with respect to the same transaction and the trial judge having found that he was an independent contractor could not have approved verdicts finding him to have been an agent or servant. The statement of His Honor to the effect that there was evidence of Riggins' agency in this matter sufficient to take the case to the jury must accordingly be regarded as a mere abstraction and as incongruous surplusage in the judgments.

For the reason stated, the petition for *certiorari* is denied.

226

Mr. Chief Justice Green delivered the opinion of the Court.

The first proposition of the petition to rehear is that the Court deprived petitioners of statutory rights in disposing of these cases without oral argument. For this contention counsel refer to section 10639 of the Code.

█ This statute has no application. This Court did not reverse the judgment of the Court of Appeals, nor did that Court reverse the judgment of the trial court.

In *West Construction Co.* v. *White,* 130 Tenn., 520, 172 S. W., 301, to which counsel refer, this Court reversed the judgment of the Court of Appeals. In *W. T. Grant Co.* v. *Tanner,* 170 Tenn., 451, 95 S. W. (2d), 926, the reference to section 10639 of the Code was obviously a misprint. The intention was to refer to section 10629, the Court of Appeals Act, which requires that cases be set down for oral argument when *certiorari* is granted.

It is again urged that the practice followed in *Merriman* v. *Coca-Cola Bottling Co.,* 17 Tenn. App., 433, 68 S. W. (2d), 149, should have been followed here and judgments entered upon the verdicts in favor of the plaintiffs.

The Court of Appeals held in that case that where the trial court set aside the finding of the jury by a misapplication of legal principles to the evidence, the appellate court would re-instate the verdict and enter judgment on the verdict instead of remanding the case for a new trial. Petition for *certiorari* was denied by this Court because there was sufficient evidence to support the verdict tested by correct legal principles. Such is the effect of the cases upon which the Court of Appeals

based its rule in *Merriman* v. *Coca-Cola Bottling Co.,* *supra.*

In the cases before us we find no evidence sufficient to support the verdicts on any sound theory of law. We could not, therefore, re-instate the verdicts.

The remainder of the petition to rehear consists of an argument based upon the facts. We discussed the evidence in the opinion filed. So did the Court of Appeals. We are not able to view the evidence as counsel does and further discussion would be without profit.

The observations made by the trial judge in setting aside the verdict, which he incorporated in his judgment, could have no more force than like observations would be given had he heard the case without a jury. In the latter event, the judgment would have been affirmed if it could have been rested on any theory supported by material evidence. *Weinstein* v. *Barrasso,* 139 Tenn., 593, 202 S. W., 920, L. R. A., 1918D, 1174; *Stephens* v. *Mason,* 99 Tenn., 512, 42 S. W., 143; *Brooks* v. *Paper Company,* 94 Tenn., 701, 31. S. W., 160.

The petition is denied.