[No. 31353. Department Two. November 30, 1950]

DALE McNEW *et al., Appellants,* v. PUGET SOUND PULP & TIMBER CO., *Respondent.*[1]

*Lew E. Flanders, Malcolm J. Bell,* and *Little, Burgunder & Smith,* for appellants.

*Gordon H. Sweany, Carl P. Zapp,* and *W. R. McKelvy,* for respondent.

GRADY, J.—This action was brought by Dale E. McNew and his wife, Olive, and Ida E. McNew, his mother, against Puget Sound Pulp & Timber Co., to recover damages for personal injuries sustained by them as a result of a collision between the automobile in which they were riding and the one being driven by Eric A. Nelson. The complaint alleged that Nelson was in the employ of respondent and acting within the course and scope of his employment. When appellants rested their case, the court granted a motion of respondent for an involuntary nonsuit, and subsequently made an order dismissing the action.

[1]Reported in 224 P. (2d) 627.

The question to be decided is whether the evidence viewed most favorably to appellants, together with all justifiable inferences from such evidence, would permit of a finding and conclusion by a jury that, at the time of the collision between the two automobiles, Eric A. Nelson was so acting in the capacity of an employee of respondent as to render it legally liable because of the negligence on his part.

The evidence to which the foregoing tests must be applied establishes the following situation: The respondent operated a logging camp. Nelson was employed as head cook. He worked over each alternate weekend. On other weekends he made the practice of visiting his family in Mukilteo. The route traveled from the camp was by way of Arlington and Everett. He would leave camp on Friday morning and return Sunday evening, using his own automobile. On many occasions he had purchased supplies for the camp and the bills were paid by respondent. On a weekend in September, 1947, Nelson journeyed to Everett, where he purchased some coffee and pepper and also acquired a toilet bowl and seat for use at the camp. He then continued to Mukilteo and visited his family. On Sunday he loaded the articles purchased into his automobile and proceeded over the usual route towards camp. About a mile outside of Arlington, and while driving on the wrong side of the highway, he collided with another automobile causing injury to its occupants and his own death.

If we had before us the question of liability of respondent for the value of the supplies purchased by Nelson, it would admit of but one answer, as it is clear he not only did such acts with its knowledge and consent, but they were ratified by respondent. By reason of the allowable course of conduct on the part of Nelson by respondent, those with whom he contracted must have believed, and certainly they had good reason to believe and rely upon the fact that he had been authorized to contract for the purchase of camp supplies. Liability, or want of it, must depend on the relationship of employer and employee and whether or not Nelson was acting in the course and scope of his employment. We accept

the view that the employer-employee relationship existed and that the negligence of Nelson was the proximate cause of the injuries appellants sustained.

The question involved here may be the subject of conflicting evidence, in which event it becomes a question of fact to be determined by a jury. If there is no dispute as to the facts, and it can be said that reasonable minds cannot differ as to the conclusions to be drawn from the evidence and justifiable inferences to be indulged in, then the whole matter becomes a question of law for the court to decide. It is our opinion that the record presents the latter situation.

Much has been said by text writers and by the courts in their opinions on the subject before us, and general rules of law have been pronounced which serve as guides. They may be found in cases considering the relationships of principal and agent, master and servant and cases arising under the workmen's compensation act. Situations arise where the employee is using a motor vehicle belonging to the employer, or he may be using his own automobile, and in so doing is performing some work or duty for his employer, or he may be serving some purpose of his own as well as a purpose of his employer. There are many situations to be found where the primary purpose is to serve the employer, but the employee deviates and causes an injury to others, or the primary purpose is to serve the interests or pleasure of the employee and he makes a deviation for the benefit of his employer during which he negligently causes injury to others.

The ownership of the vehicle, while not a determinative factor, is usually an important circumstance to consider. The general trend of authority is in the direction of holding that, where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured, and the employer will be held responsible unless it clearly appears that the employee could not have been directly or indirectly serving his em-

ployer; also the fact that the predominant motive of the employee is to benefit himself does not prevent the act from being within the course or scope of employment, and if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability if the act otherwise is within the service.

Reference is made to what is sometimes called the "going and coming" rule, where the employee outside of customary working hours is driving a motor vehicle to his home or to his work, and, on his way, is in the discharge of some duty incidental to the nature of his employment in the interest of, or under the direction of, his employer. If he negligently injures some one en route, the employer becomes liable on the theory that such injury arises out of and in the course of employment. These principles have found expression in *Church v. Department of Labor & Industries*, 179 Wash. 443, 38 P. (2d) 234; *Poundstone v. Whitney*, 189 Wash. 494, 65 P. (2d) 1261; *Carlson v. P. F. Collier & Son, Corp.*, 190 Wash. 301, 67 P. (2d) 842; *Carmin v. Port of Seattle*, 10 Wn. (2d) 139, 116 P. (2d) 338; *Leary v. Department of Labor & Industries*, 18 Wn. (2d) 532, 140 P. (2d) 292; *Leuthold v. Goodman*, 22 Wn. (2d) 583, 157 P. (2d) 326; 39 C. J. 1282, Master & Servant, § 1472; 5 Blashfield, Cyclopedia of Automobile Law & Practice, 196, § 3041; 57 C. J. S. 323, Master & Servant, § 574; 1 Restatement, Agency, § 236. If we should take out of their settings some of the statements made by the foregoing authorities, as well as many others along the same line which might be cited, and apply them literally, we might say, or a trier of fact might find, that the purchasing and transporting of the supplies for the camp were such acts in the course and scope of the employment of Nelson as to render respondent liable for his acts of negligence. However, to do this would extend the doctrine of liability beyond its true scope.

In some cases we find the element of control, or right of control, or the absence thereof, a circumstance that has been considered, and also the circumstance of whether the em-

ployee was or was not being compensated for his time and service. In some of the cases, it has appeared that the perils of the highway which were encountered were unrelated to the service being rendered by the employee to the employer and there existed as a fact, or at least a permissible inference, that the journey made by the employee would have been made though no service was rendered to the employer.

If the work of the employee creates the necessity for travel, he may be in the course of his employment though he is serving at the same time some purpose of his own; but if the work for the employer had no part in creating the necessity for travel, and the journey would have been made though no business was transacted for the employer, or would not have been made if the private purpose was abandoned, the journey may be regarded as personal and there would be no employer liability. *Marks' Dependents v. Gray,* 251 N. Y. 90, 167 N. E. 181; *Joseph Mandell's Case,* 322 Mass. 328, 77 N. E. (2d) 308; *Barragar v. Industrial Commission,* 205 Wis. 550, 238 N. W. 368, 78 A. L. R. 679; *Murphy v. Board of Education,* 314 Mich. 226, 22 N. W. (2d) 280; *Cunningham v. Union Chevrolet Co.,* 177 Tenn. 214, 147 S. W. (2d) 746; 148 S. W. (2d) 633.

■ It is our opinion that the undisputed facts and the justifiable inferences to be drawn demonstrate to a certainty that Nelson made this particular journey to serve his own purpose, namely, to visit his family, and that the accident in which he became involved was wholly unrelated to the purchase and transportation of the supplies for the camp. He would have made the journey home whether or not he intended to purchase supplies. The necessity for traveling on the highway was to go to and from his home. The accident did not occur while he was on the way to purchase the supplies, and the fact that they were in his automobile was merely incidental and contributed in no way to the accident. He would not have made the journey except to visit his family. It is our opinion that, at the time of the accident, Nelson was on a journey of his own, and what he had done

or was doing to accommodate his employer was not done in the course of, or scope of, his employment as head cook.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, and HAMLEY, JJ., concur.

MALLERY, J., dissents.