[No. 37327-1-II.  Division Two.  May 27, 2009.]

RIZWANA RAHMAN, *Appellant*, v. THE STATE OF WASHINGTON, *Respondent*.

*Candiss Anne Watson* (of *Law Office of Anne Watson, PLLC*) and *Karen M. Kay* (of *Law Office of Harold Carr, PS*), for appellant.

*Robert M. McKenna, Attorney General*, and *John C. Dittman, Assistant*, for respondent.

¶1 BRIDGEWATER, J. — Rizwana Rahman was injured while riding in a state vehicle as an unauthorized passenger. She filed suit against the State of Washington for damages associated with her injuries. The trial court summarily dismissed her complaint. We hold that as a matter of law the State is vicariously liable for Rizwana's injuries under the doctrine of respondeat superior. We reverse and remand for further proceedings.

## FACTS

¶2 Mohammad Shahidur Rahman was employed as a summer intern by the Washington State Department of Ecology (Department) from June 1 to August 31, 2005. He was assigned to the dam safety office. His job duties included assisting with drafting, performing engineering calculations and basic data analysis, accompanying senior engineers on inspections, and helping to write reports.

¶3 When Mohammad[1] was hired, he was required to review Department policies including the use of state vehicles. Department of Ecology Policy 11-10 covers the operation of department vehicles. It provides, "Ecology vehicles are not to be used for personal trips unrelated to the state business for which they were assigned, nor to transport passengers that are not on official state business." Clerk's Papers at 155.

¶4 Mohammad had been working for about two months when his supervisor, Douglas Johnson, assigned him to travel for an inspection. Mohammad was to drive to Spokane in order to meet a department hydrologist with whom he would inspect a construction site. Johnson authorized Mohammad to sign out a department vehicle overnight so that he could leave directly for Spokane the next morning.

¶5 The night before Mohammad's scheduled business trip, his wife Rizwana felt ill. She was also lonely and wanted to go with her husband the next day. The couple had been recently married and she had just moved to Washington. Mohammad agreed that Rizwana could ride with him to Spokane the next day. They planned for her to stay in the car during the site visit, and then they would drive directly home so Mohammad could be back at his office the following day. Mohammad did not inform anyone at the Department that Rizwana was going to accompany him.

¶6 Mohammad and Rizwana left Olympia about 5 AM on July 26. It was dark and drizzling when they passed Tiger Summit on Highway 18. As Mohammad drove downhill, he failed to negotiate a curve. The vehicle left the roadway, struck a tree, and rolled two or three times. Rizwana was badly injured.

¶7 Mohammad called his supervisor from the scene of the accident, explained what had happened, and said that his wife was badly injured. Prior to that call, Johnson did not know that Mohammad's wife was with him. Johnson instructed Mohammad to attend to his wife and tell the

---

[1] We refer to the Rahmans by their first names in order to distinguish them.

state patrol officer at the scene that he worked for the Department. Mohammad later received a letter of reprimand for violating the Department policy that prohibits transporting passengers who are not on official business.

¶8 Rizwana filed a complaint for personal injuries in Thurston County Superior Court on June 16, 2006, naming the State of Washington and Mohammad as defendants. The complaint was later amended to name the State of Washington as the sole defendant.

¶9 The State filed a third-party complaint, denying its liability and asserting that to the extent it might be found liable for Mohammad's actions, it was entitled to full indemnification from Mohammad and full or partial indemnification from the marital community of Mohammad and Rizwana for any damages, costs, or fees assessed against it.

¶10 Rizwana moved for partial summary judgment, seeking an order determining that the State was vicariously liable under the doctrine of respondeat superior for Mohammad's negligence in causing the accident. The State filed a cross-motion, asserting that it was not liable for Rizwana's injuries because, as a matter of law, Mohammad's use of a state vehicle to transport his wife was outside the scope of his employment.

¶11 Argument was heard before Thurston County Superior Court Judge Anne Hirsch on March 16, 2007. Summary judgment was denied pending discovery as to whether the State had policies or procedures for authorizing non-employee passengers.

¶12 The parties later renewed their motions. Argument was heard before Thurston County Superior Court Judge Chris Wickham on January 25, 2008. The material facts were undisputed:

> Everyone agrees that [Mohammad] was working for the State of Washington, that there was a policy that prevented [him] from having a passenger in a state vehicle on state business. Everyone agrees that [he] took his wife on a trip east of the mountains, in violation of the policy. She was injured in an automobile accident . . . .

. . . .

And everyone agrees that [Mohammad's] operation of the vehicle was negligent.

Report of Proceedings (RP) (Jan. 25, 2008) at 5.

¶13 The court framed the question at issue as "whether the State has a duty to [Rizwana] under the Doctrine of Respondeat Superior." RP (Jan. 25, 2008) at 5. The court granted the State's motion, ruling that "there is no liability under the theory of Respondeat Superior under these circumstances." RP (Jan. 25, 2008) at 18. The court noted that there is no Washington case law directly on point and relied in part on *Restatement (Second) of Agency* § 242 (1958) to determine that the circumstance presented warranted special treatment and that general principles of respondeat superior do not apply in this context. Rizwana's appeal to this court followed.

## ANALYSIS

¶14 In reviewing orders on summary judgment, this court engages in the same inquiry as the trial court. *Huff v. Budbill*, 141 Wn.2d 1, 7, 1 P.3d 1138 (2000). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Huff*, 141 Wn.2d at 7.

¶15 Rizwana argues that because Mohammad was performing his job functions at the express direction of his employer when the accident occurred, the State is vicariously liable for her injuries as a matter of law under the doctrine of respondeat superior. Under this doctrine, an employer may be liable for its employee's negligence in causing injuries to third persons if the employee was within the "scope of employment" at the time of the occurrence. *Breedlove v. Stout*, 104 Wn. App. 67, 69, 14 P.3d 897 (2001). The test for determining if an employee is acting in the scope of employment is "whether the employee was, at the time, engaged in the performance of the duties required of

him by his contract of employment, or by specific direction of his employer." *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573, 320 P.2d 311 (1958) (emphasis omitted). While determining the scope of employment is normally a jury question, where there can be only one reasonable inference from the undisputed facts, the issue may be resolved at summary judgment. *Breedlove*, 104 Wn. App. at 70 n.5; *Strachan v. Kitsap County*, 27 Wn. App. 271, 274-75, 616 P.2d 1251, *review denied*, 94 Wn.2d 1025 (1980).

¶16 Our Supreme Court has further explained:

> The general trend of authority is in the direction of holding that, where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business the employee was actually engaged in when a third person was injured, and the employer will be held responsible unless it clearly appears that the employee could not have been directly or indirectly serving his employer; also the fact that the predominant motive of the employee *is* to benefit himself does not prevent the act from being within the course or scope of employment, and if the purpose of serving the employer's business actuates the employee to any appreciable extent, the employer is subject to liability if the act otherwise is within the service.

*McNew v. Puget Sound Pulp & Timber Co.*, 37 Wn.2d 495, 497-98, 224 P.2d 627 (1950). Moreover, the court has rejected the notion that "breaking company . . . policy" renders an employee not within the scope of employment. *Dickinson v. Edwards*, 105 Wn.2d 457, 470, 716 P.2d 814 (1986). The *Dickinson* court observed that " '[a]n act, although forbidden, or done in a forbidden manner, may be within the scope of employment.' " *Dickinson*, 105 Wn.2d at 470 (alteration in original) (quoting RESTATEMENT (SECOND) OF AGENCY § 230 (1958)). Accordingly, *Dickinson* held that an employer may be liable for the negligent acts of its employee, although such act "may be contrary to instructions." *Dickinson*, 105 Wn.2d at 470.

¶17 Likewise, in *Smith v. Leber*, 34 Wn.2d 611, 209 P.2d 297 (1949), our Supreme Court dealt with a similar issue.

Leber claimed it was not liable for its employee's negligence in causing a car accident because the employee was driving in a manner contrary to the employer's instructions. *Smith*, 34 Wn.2d at 618, 622-23. The employee had been directed to return a rented vehicle. However, his supervisor became aware that the employee had been drinking and told him not to drive it. The employee drove the vehicle anyway and caused an accident. *Smith*, 34 Wn.2d at 616-18. The court found Leber liable, stating, " '[A]n employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer.' " *Smith*, 34 Wn.2d at 623 (quoting 35 AM. JUR. *Master and Servant* § 559, at 993).

¶18 Contrary to the above noted cases, the State urges us to hold that an employer is not liable for injuries suffered by an unauthorized passenger that were caused by its employee. The State relies upon *Restatement (Second) of Agency* § 242 (1958), which states:

> A master is not subject to liability for the conduct of a servant towards a person harmed as the result of accepting or soliciting from the servant an invitation, not binding upon the master, to enter or remain upon the master's premises or vehicle, although the conduct which immediately causes the harm is within the scope of the servant's employment.

But this section of the *Restatement* has never been adopted or even cited in a published appellate decision in this state.[2] The State acknowledges this but contends that the rule is in accord with the earlier Washington cases of *Gruber v. Cater Transfer Co.*, 96 Wash. 544, 165 P. 491 (1917), and *McQueen v. People's Store Co.*, 97 Wash. 387, 166 P. 626 (1917).

¶19 In *Gruber*, the employer, Cater Transfer, was a business engaged in the transport of goods using both automobile and horse-drawn trucks. *Gruber*, 96 Wash. at

---

[2] Notably, section 242 has no equivalent counterpart in *Restatement (Third) of Agency*, which the American Law Institute adopted in 2005 and published in 2006. *See* 2 RESTATEMENT (THIRD) OF AGENCY 488 (2006) ("PARALLEL TABLES").

545. Gruber hired Cater Transfer to move his household goods. Cater's driver allowed Gruber to ride on the cargo and Gruber was injured when he was ejected from the truck when it hit a bump in the road. The Supreme Court held that the driver was without authority to allow Gruber to ride with the cargo and therefore found in favor of Cater Transfer. *Gruber*, 96 Wash. at 549-50.

¶20 *Gruber* is inapposite. It does not mention respondeat superior and does not meaningfully discuss scope of employment for present purposes. Moreover, the decision turns on two key facts not present here: first, that the vehicle at issue was obviously not meant to accommodate passengers in its cargo area, and second, that the parties had contracted to carry cargo and not passengers. *See Gruber*, 96 Wash. at 546-49.[3]

¶21 In *McQueen*, the court considered the case of a delivery driver who chose to give two women a ride on the running board of his employer's vehicle. One of the women was injured when she either fell or jumped off the vehicle as it was moving. *McQueen*, 97 Wash. at 388. The Supreme Court held that the employee was not within the scope of his employment and his employer was not liable. *McQueen*, 97 Wash. at 390. Addressing whether the driver's invitation to the women to ride on the truck's running board fell within the scope of his employment, our Supreme Court stated:

> the act complained of must have been done while the servant was engaged in doing some act under authority from his master; not that, while engaged in the act, he is employed in the master's business; but the act must have been in the furtherance of the master's business and such as may be fairly said to have been either expressly or impliedly authorized by the master.

---

[3] We acknowledge that *Gruber* is later recharacterized in *McQueen* as holding that the driver of the truck had no real or apparent authority to allow or permit Gruber to ride upon the truck, "or, stated as a legal proposition, that the driver was not acting within the scope of his employment." *McQueen*, 97 Wash. at 390. Still, the circumstances of the *Gruber* case are significantly different than those of the present case, and the analysis employed in *Gruber* is simply not helpful here.

*McQueen*, 97 Wash. at 388-89. In other words, "the act causing the injury must pertain to the duties which the servant was employed to perform and is being done as a means or for the purpose of doing the work assigned him by the master." *McQueen*, 97 Wash. at 389.

¶22 The *McQueen* court held that in inviting the women to ride on the running board of the truck the driver was "not acting within the scope of his employment, there being no question that he had no authority to invite or permit persons to ride with him while delivering merchandise for [his employer]." *McQueen*, 97 Wash. at 389-90. The court reasoned as follows:

> In inviting the [women] to ride upon the truck, [the driver] was engaged in furthering his own pleasure and not in furthering his master's business. His employment was to drive the truck. In inviting these [women] to ride with him, he was neither doing it as a means nor for the purpose of performing that work. It had no connection with his work, either directly or indirectly. In extending this invitation, [the driver] was acting without any reference to the business in which he was employed. It was an independent and private purpose of his own contributing to his pleasure but not to his service. While so acting, he was his own master irrespective of the fact that the facilities afforded him to do his work were instrumental in inflicting the injuries complained of.

*McQueen*, 97 Wash. at 390.

¶23 *McQueen*'s rationale would seem to apply here. Mohammad's conduct of taking his wife along on his business trip to Spokane as an unauthorized passenger in a state vehicle may be described as an independent and private purpose of his own contributing to his pleasure but not to his service. Nevertheless, *McQueen* is distinguishable from the present case because, unlike the driver in *McQueen*, Mohammad was clearly engaged in his employer's business—driving to Spokane—when the accident oc-

curred. Mohammad did not detour from his employer's business.[4]

¶24 Moreover, 20 years after *McQueen*, the Supreme Court in *Poundstone v. Whitney*, 189 Wash. 494, 65 P.2d 1261 (1937), relied in part on *McQueen* in affirming judgment against an employer for his employee's negligence in causing a car accident resulting in injuries. In *Poundstone*, the employees of a car dealership had been instructed to be on the lookout for prospective customers. The business owner had authorized a shop employee to drive the employer's automobile in a parade. The employee went out of his way to take a prospective customer to participate in the parade. On his way to pick up the prospect, the employee negligently injured third parties, to whom the employer was held liable. *Poundstone*, 189 Wash. at 495-99. The *Poundstone* court held that "[t]he fact that [the employee] was performing an unauthorized act does not defeat a recovery." *Poundstone*, 189 Wash. at 500. The *Poundstone* court opined that whether an employee, at the time the act was done for which the employer was sought to be held liable, was within the scope of his employment, depends upon whether the act had been expressly or impliedly authorized by the employer. *Poundstone*, 189 Wash. at 499. But additionally, "the employer is liable if the act complained of was incidental to the acts expressly or impliedly authorized or indirectly contributed to the furtherance of the business of the employer." *Poundstone*, 189 Wash. at 499 (citing cases including *McQueen*).[5]

---

[4] The facts recited in the *McQueen* case suggest that the driver's purpose in driving his employer's truck across the street while the women sat on the truck's running board was to continue to conceal one of the women from her brother-in-law's view. *See McQueen*, 97 Wash. at 387-88. The case does not clearly state whether the driver was also in route to another delivery for his employer when so operating the truck, *see McQueen*, 97 Wash. at 387-88, but the court's analysis suggests that he was not. *See McQueen*, 97 Wash. at 389 ("so long as the thing the servant is doing is in the furtherance of the master's business, the master must answer for the manner in which the act is done").

[5] The dissent in *Poundstone* likewise relied in part on *McQueen* in arguing that the employer should not be held liable where the employee engaged in unauthorized acts without the knowledge or consent of his employer, thereby rendering his

¶25 *Poundstone* rejected the notion that an employee's actions contrary to his employer's instructions necessarily rendered the employee's conduct outside of his scope of employment. Where an employee is " 'about his master's business, but acting in a forbidden way,' " his disobedience " '[does] not place him outside of the scope of his employment.' " *Poundstone*, 189 Wash. at 501 (quoting *Loux v. Harris*, 226 Mich. 315, 197 N.W. 494, 495-96 (1924)). " 'The master is responsible for the negligent acts or omissions of his servants in the course of their employment, though unauthorized or even forbidden by him, and although outside of their line of duty, and without regard to their motives.' " *Poundstone*, 189 Wash. at 502 (internal quotation marks omitted) (quoting *Luckett v. Reighard*, 248 Pa. 24, 93 A. 773, 775 (1915)). *Poundstone* noted:

> "If it were true that a servant is outside the scope of his employment whenever he disobeys the orders of his master the doctrine of *respondeat superior* would have but scant application, for the master could always instruct his servant to use ordinary care under all circumstances. The servant's negligence would therefore always be contrary to orders and the nonliability of the master would follow. But such is not the law. The servant is within the scope of his employment when he is engaged in the master's service and furthering the master's business though the particular act is contrary to instructions."

*Poundstone*, 189 Wash. at 501 (quoting *Smith v. Yellow Cab Co.*, 173 Wis. 33, 180 N.W. 125, 126 (1920)).

¶26 Moreover, as noted, our Supreme Court's subsequent decisions instruct that where the employee combines his own business with that of his employer, "the employer will be held responsible" for the employee's negligent conduct "unless it clearly appears that the employee could not have been directly or indirectly serving his employer." *McNew*, 37 Wn.2d at 497-98. Here, Mohammad was clearly serving his employer by driving to Spokane when his negligent driving caused the accident. Rizwana's presence

---

conduct outside the scope of his employment. *See Poundstone*, 189 Wash. at 504-05, 510 (Steinert, C.J., dissenting). But that view did not win the day.

as an unauthorized passenger did not change that. *Smith*, 34 Wn.2d at 623; *Dickinson*, 105 Wn.2d at 470. Accordingly, applying *McNew*, *Smith*, *Dickinson*, and *Poundstone*, we hold that Mohammad was acting within the scope of his employment at the time of the accident, thereby rendering his employer vicariously liable for his negligence. We decline the State's invitation to adopt and apply *Restatement (Second) of Agency* § 242, because doing so would be contrary to *McNew*, *Smith*, *Dickinson*, and *Poundstone*.[6]

¶27 We additionally note that the California Supreme Court has applied the same rule quoted above from *McNew* in the unauthorized passenger context in *Perez v. Van Groningen & Sons, Inc.*, 41 Cal. 3d 962, 968-70, 719 P.2d 676, 680, 227 Cal. Rptr. 106 (1986). Perez was injured while riding as an unauthorized passenger on a tractor driven by Garcia as Garcia performed his assigned task of "disking" his employer's orchard. Perez's injury occurred when a low branch knocked him off the tractor and onto the disk machinery being pulled by the tractor. The California Supreme Court held that the trial court erred in ruling that the issue of scope of employment was a question of fact for the jury in that case. The court observed that it was uncontroverted that at the time of the accident Garcia was driving his employer's tractor in his employer's orchards and was performing an assigned task during working hours. When Perez asked the court to instruct that Garcia was acting within the scope of his employment as a matter of law, the defendant (Garcia's employer) argued against the proposed instruction, claiming that Garcia violated company instructions by taking an unauthorized passenger

---

[6] The State's reliance upon *Thompson v. Everett Clinic*, 71 Wn. App. 548, 860 P.2d 1054 (1993), *review denied*, 123 Wn.2d 1027 (1994), and *Kuehn v. White*, 24 Wn. App. 274, 600 P.2d 679 (1979), is also misplaced. These cases hold that a tort committed by an agent, even if committed while engaged in the employment of the principal, is not attributable to the principal if the conduct emanated from the agent's wholly personal motive and was done solely to gratify the agent's personal objectives or desires. *See Thompson*, 71 Wn. App. at 553; *Kuehn*, 24 Wn. App. at 278. These cases are distinguishable in that they address the issue of a principal's vicarious liability where an agent assaults a third party. Because the current case does not involve an intentional tort, *Thompson* and *Kuehn* are inapposite.

and that Garcia's conduct benefited only Garcia and not Garcia's employer. As noted, the trial court ruled that the question of scope of employment was an issue of fact for the jury and instructed the jury accordingly. *Perez*, 41 Cal. 3d at 968-69.

¶28 In holding that the trial court erred, the California Supreme Court opined that "[a]s long as it is clear that at the time of the injury the employee was following his employer's instructions to disk the orchard, the fact that he was not authorized to take a passenger is immaterial." *Perez*, 41 Cal. 3d at 969. The *Perez* court relied on a prior California Supreme Court case in which the plaintiff's decedent had been killed in an accident when defendant's employee drove through a red light. As in the *Perez* case:

> [d]efendants argued that respondeat superior should not apply because the employee had no authority to invite passengers. We rejected that argument, stating: ". . . it is well known that employee-drivers often commit such breaches of duty by carrying unauthorized passengers, and so long as injury to the rider occurs while the driver is carrying out his employer's business, the employer must be held liable under the familiar principle of liability for a servant's torts committed as part of the transaction of the master's business, *even though the injury may accrue coincident with behavior contrary to the master's express orders*."

*Perez*, 41 Cal. 3d at 969 (second alteration in original) (quoting *Meyer v. Blackman*, 59 Cal. 2d 668, 679, 381 P.2d 916, 31 Cal. Rptr. 36 (1963)). We find this application of the rule expressed in *McNew* to be persuasive.

¶29 We also reject the State's invitation to apply the law of trespass to affirm the trial court. Notably, the State's sparse discussion of Washington trespass law cites no case from this jurisdiction that applies trespass law in this context, and we decline to do so here.

¶30 Finally, we decline the State's invitation to consider RCW 42.52.160 because the statute is not properly before us. On the eve of oral argument, the State filed a document entitled "Supplemental Certificate of Authority"

asking this court to consider RCW 42.52.160 "on the issue of respondeat superior." While a party may file a statement of additional authorities, *see* RAP 10.8, the present appeal concerns the trial court's summary judgment determination, to which RAP 9.12 applies. When reviewing an order granting or denying a motion for summary judgment, we will consider "only evidence and issues called to the attention of the trial court." RAP 9.12; *see also Sourakli v. Kyriakos, Inc.*, 144 Wn. App. 501, 509, 182 P.3d 985 (2008) (citing RAP 9.12 as basis for declining to consider argument not made to the trial court), *review denied*, 165 Wn.2d 1017 (2009); *Coronado v. Orona*, 137 Wn. App. 308, 318, 153 P.3d 217 (2007) (RAP 9.12 limits appellate court's review to issues brought to the trial court's attention). The State did not argue RCW 42.52.160 to the trial court. Accordingly, we decline to consider the State's "new" argument.[7]

## CONCLUSION

¶31 We hold that the trial court erred in granting summary judgment to the State on the issue of vicarious liability. Because Mohammad was clearly engaged in his employer's business when his negligence caused injury to Rizwana, Mohammad's employer, the Department, is vicariously liable under the doctrine of respondeat superior as a matter of law. We reverse and remand with instructions to the trial court to enter partial summary judgment in favor of Rizwana on the issue of vicarious liability and for further proceedings consistent with this opinion.

PENOYAR, A.C.J., and ARMSTRONG, J., concur.

Review granted at 167 Wn.2d 1009 (2009).

---

[7] Even if we were to consider the matter, we would hold that RCW 42.52.160 has no application here. The statute provides in relevant part that no state officer or employee may "employ or use any person, money, or property under the officer's or employee's official control or direction, or in his or her official custody, for the private benefit or gain of the officer, employee, or another." RCW 42.52.160(1). The purpose of this statute is to ensure that state employees "do not waste official resources on personal business." *Clawson v. Grays Harbor Coll. Dist. No. 2*, 148 Wn.2d 528, 545, 61 P.3d 1130 (2003). There is no allegation or evidence that Mohammad wasted state resources. He did not use the state vehicle for personal errands for himself or his wife; he simply permitted Rizwana to ride along with him to a scheduled business meeting in Spokane.